La Sucesión de Damián del Moral y Nadal, Etc., demandantes y apelados, *v.* The Mayagüez Light, Power & Ice Co., Inc., demandada y apelante.

Núm. 7328.—*Sometido:* Noviembre 15, 1938. *Resuelto:* Enero 26, 1939.

*J. Alemañy Sosa,* abogado de la apelante; *Pascasio Fajardo Martínez,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Alegan los demandantes que con fecha 9 de marzo de 1927 su causante, don Damián del Moral y Nadal, y la demandada otorgaron el contrato que a continuación se transcribe:

### "CONCESIÓN DE SERVIDUMBRE VOLUNTARIA DE PASO DE LÍNEA DE TRANSMISIÓN ELÉCTRICA

"Entre don Damián del Moral, soltero, mayor de edad, propietario y vecino de Mayagüez, P. R., que en adelante se designará la Primera Parte y The Mayagüez Light, Power & Ice Company, Inc., que es una corporación constituída de acuerdo con las leyes de Puerto Rico, con oficina principal en la ciudad de Mayagüez donde tiene establecida una planta eléctrica, y que en adelante se designará la Segunda Parte, representada por su Administrador don Rodolfo Vera, se conviene hoy lo siguiente:

"Que la Primera Parte es dueña de una finca rústica en el Bo. Sábalos, jurisdicción de Mayagüez, P. R., de una cabida de 60 cuerdas super. Y en tal carácter, y previa la consideración de un *dollar* constituye e impone sobre el referido inmueble una servidumbre de paso de línea de transmisión eléctrica dentro y a través de la propiedad mencionada, autorizando a los ingenieros de la Segunda Parte

y sus subalternos para que entren y realicen en la referida propiedad todos los trabajos que fueren necesarios para ejecutar y llevar a cabo la instalación de la referida línea de transmisión eléctrica, quedando obligada la Segunda Parte a proteger las plantaciones que hubieren en dicha propiedad, a fin de evitar que se causen perjuicios indebidamente a dichas plantaciones, quedando, por consiguiente, la Segunda Parte, obligada a indemnizar todos los daños y perjuicios que se causen en las plantaciones de la referida finca por consecuencia de la instalación y mantenimiento de la referida línea de transmisión eléctrica, quedando también obligada a indemnizar en debida forma los daños personales que se ocasionasen por cualquier accidente producido por corriente eléctrica o en cualquiera otra forma como resultado de la instalación de dicha línea de transmisión, consintiendo también la Primera Parte de este contrato en permitir y autorizar a la Segunda Parte y sus subalternos a entrar en la referida finca para los fines de la reparación y conservación de dicha línea, una vez terminada su construcción.

"La servidumbre de paso de línea de transmisión eléctrica que se autoriza y constituye en este acto, será por el término de tiempo que sea necesario mantener instalada dicha línea sobre la referida propiedad.

"The Mayagüez Light, Power & Ice Co., Inc., se obliga a remover el poste del sitio en donde va a ser enclavado, tan pronto como el Sr. del Moral vaya a rebajar el terreno en que va a ser colocado dicho poste, para nivelarlo, y lo colocará en el sitio que le designe el Sr. del Moral, que esté en el mismo rumbo que el sitio actual.

"The Mayagüez Light, Power & Ice Co., Inc., por medio de su representante legal, acepta en todas sus partes las condiciones establecidas en el presente contrato, obligándose por consiguiente al cumplimiento estricto de las mismas.

"Este contrato se elevará a escritura pública tan pronto como cualquiera de las partes así lo solicite.

"Firmado en el Pueblo de Mayagüez, P. R., a los nueve días del mes de marzo de 1927.

"(Fdo.) Rodolfo Vera. (Fdo.) D. del Moral.

"(Fdo.) Adolfo Torrellas
Testigo."

Que de acuerdo con dicho contrato, y poco después de otorgarse el mismo, la demandada construyó en la finca que es hoy de los demandantes, una torre de acero "a algunos

metros de la colindancia de la carretera insular que conduce de Mayagüez a San Germán instalando en ella alambres transmisores de corriente eléctrica que cruzan la finca en cuestión de Este a Oeste . . .''; y que la demandada violó el referido contrato, primero, al no pagar por el derecho de servidumbre el dólar a que se hace mención en el párrafo segundo del contrato, y segundo, al negarse a remover la torre del sitio donde estaba enclavada, hacia el Oeste, en el mismo rumbo. En la súplica piden que se declare dicho contrato rescindido y nulo; que se conceda a la demandada un término razonable para desmontar la torre; y que se le imponga el pago de costas y honorarios.

Cuatro días después de radicada la demanda, la demandada consignó en corte la suma de un dólar y excepcionó la demanda por considerar que ella no aduce hechos suficientes para constituir causa de acción. También contestó y contrademandó, aceptando unos hechos y negando que el pago de $1.00 fijado como precio de la servidumbre tuviera que hacerse previamente; que la línea transmisora de corriente fuera utilizada exclusivamente para beneficio de la demandada, y sí para beneficio del público; que haya dejado de pagar o haya sido requerida en forma alguna para pagar la suma de un dólar convenida como precio de la servidumbre; que el causante de los demandantes tuviera necesidad alguna de hacer rebaja o nivelación en la finca de su propiedad. Y como defensas especiales alegó que se ha negado y se niega a cambiar la torre de sitio, porque el señalado por el causante de los demandantes no está en el mismo rumbo, y que la única razón en que se funda la actitud de los demandantes para exigir el traslado de la torre estriba en que la demandada se ha negado a suministrarle gratis corriente eléctrica para uso de la residencia de los demandantes.

En la contrademanda se solicita que se ordene a los demandantes que procedan a otorgar a favor de la corporación demandada la correspondiente escritura pública del con-

trato, y que de negarse a ello, la otorgue en su rebeldía el márshal.

Con esas alegaciones entraron a juicio las partes, recayendo la sentencia que es objeto de esta apelación. En ella se declara con lugar la demanda y en su consecuencia se condena a la demandada a remover la torre de acero del sitio en que actualmente enclava y a colocarla en el mismo rumbo y línea recta con dirección hacia el oeste, en el sitio que se señaló en la inspección ocular, con el pronunciamiento adicional de que si la demandada no procedía a cumplir con la sentencia, entonces se tendría por rescindido y nulo y sin valor ni efecto legal alguno el contrato de 9 de marzo de 1927, y por tanto, libre la finca de la servidumbre que por él se le impuso, con costas a cargo de la demandada.

El primer señalamiento dice así:

"1. La Corte erró al declarar que no existía causa en el contrato de constitución de servidumbre celebrado entre el causante de la Sucesión apelada y la Compañía apelante por falta de pago de la suma de $1.00 que se fijó como precio de dicha servidumbre, después que la Corte admitió la consignación que se hizo de dicha suma y de figurar en el contrato otras obligaciones que constituyen causa suficiente para la celebración del mismo."

La corte inferior en su opinión dice:

"La Corte llega a las siguientes conclusiones:

"Que en el contrato en cuestión no hubo consideración, pues no se pagó el dólar estipulado como precio del derecho de la servidumbre y que no existe prueba alguna que demuestre directa o indirectamente a este tribunal que existió otra consideración en el contrato. El hecho que en el contrato en cuestión se consigne que la demandada se hacía responsable a los daños que la instalación de la torre pudiera ocasionar a la finca, serían indemnizados, así como indemnizaría cualquier daño que se ocasionase a persona alguna por tal instalación, no es consideración que pueda sostener el contrato en forma alguna. El hecho que la instalación de la línea transmisora de electricidad fuera para beneficio del público, tampoco forma consideración para dar vida legal a ese contrato."

Estamos conformes con la corte sentenciadora en que la demandada no pagó a los demandantes el dólar estipulado como precio del derecho de servidumbre, pero no lo estamos en cuanto a la conclusión de que de los hechos del caso no aparece que exista otra causa o consideración buena y suficiente para sostener la validez y eficacia del contrato entre las partes.

En primer lugar, por los términos expresos del contrato, la demandada se obligó ''a indemnizar todos los daños y perjuicios que se causen en las plantaciones de la referida finca por consecuencia de la instalación y mantenimiento de la referida línea de transmisión eléctrica, quedando también obligada a indemnizar en debida forma los daños personales que se ocasionen por cualquier accidente producido por corriente eléctrica o en cualquiera otra forma como resultado de la instalación de dicha línea de transmisión. . .'' Esto, según el caso de *Velázquez* v. *Municipio*, 36 D.P.R. 857, constituye una causa buena y suficiente para el contrato:

''La demanda alega que el demandante en realidad nunca ha recibido la cantidad de un dólar que se expresa en la escritura. Pero alega además que el alcalde, en su capacidad oficial como representante del municipio, convino en pagarle al demandante una compensación razonable por los daños que se ocasionaran a las tierras en cuestión como resultado de la construcción del acueducto. Esa promesa era una causa buena y suficiente para el contrato.''

En segundo lugar, de las mismas alegaciones de la demanda, sostenidas por la prueba, aparece que inmediatamente después de firmado el contrato de 9 de marzo de 1927 la corporación demandada, con el consentimiento de la otra parte contratante y sin que ésta insistiera en el previo pago del dólar fijado como precio nominal de la servidumbre, entró a la finca de los demandantes y erigió allí una torre de acero sobre la cual instaló los alambres transmisores de corriente eléctrica necesarios para el servicio público de alumbrado y luz eléctrica; y que desde esa fecha hasta el 23 de abril de 1934 en que se interpuso la demanda en el caso

de autos, la demandada ha estado en la posesión, goce y disfrute de la servidumbre, utilizando dicha torre y línea transmisora para dar servicio al público. La correspondencia cruzada entre el causante de los demandantes y la demandada, durante los meses de julio, agosto y septiembre de 1933, o sea más de seis años después de haber sido instaladas la torre y la línea de transmisión, es evidencia convincente de la intención de don Damián del Moral de afirmar el contrato de 9 de marzo de 1927. En toda esa correspondencia se discute el traslado de la torre de acero del sitio en que fué originalmente instalada, a otro sitio designado por el Sr. Del Moral, y no se hace mención alguna en cuanto a la falta de pago de la cantidad de un dólar. La única controversia entre las partes era en cuanto a si el sitio designado por del Moral para el nuevo emplazamiento de la torre estaba en el mismo rumbo que el sitio del actual emplazamiento, según lo estipulado en el contrato.

Después de un detenido estudio de las alegaciones y de los hechos del caso opinamos que existe causa o consideración suficiente para sostener la existencia y validez del contrato. En la obra "Restatement of the Law," Contracts, (American Law Institute) pág. 110, aparece la doctrina que consideramos aplicable al presente caso, enunciada así:

"Sec. 90.—*Promesa que razonablemente induce a una actuación definida y substancial.*—

"Una promesa que el que la hace debe razonablemente esperar que ella induzca a la persona a quien se le hace a una acción o a una abstención de carácter definido y substancial y que en realidad le indujo a tal acción o abstención es obligatoria, si la injusticia puede evitarse solamente mediante el cumplimiento de la promesa."

Véanse también: Williston on Contracts, vol. 1, sec. 140, pág. 503, y casos citados en la nota núm. 3; y 115 A.L.R. Nota, página 152.

La Corte sentenciadora parece haberse inspirado en la doctrina citada, al dictar la sentencia recurrida. Los demandantes, después de alegar que no se les había pagado previa-

mente el dólar convenido y que la compañía demandada había violado el contrato al negarse a cambiar la torre al nuevo sitio por ellos designado, pidieron a la corte que declarase el contrato rescindido y nulo como consecuencia de dichas alegadas violaciones de sus cláusulas. No accedió la corte a esa solicitud de rescisión y nulidad del contrato. Y creyendo sin duda alguna que la injusticia sólo podía evitarse mediante el cumplimiento de la promesa, se limitó a ordenar a la demandada el cumplimiento específico de su obligación de remover la torre, del sitio donde fué enclavada originalmente al sitio designado por los demandantes. Al negarse a declarar rescindido y nulo el contrato sobre concesión de servidumbre y al ordenar su cumplimiento específico por la demandada, la corte sentenciadora reconoció la existencia y validez del contrato. Y así lo ha reconocido también la parte actora al no interponer recurso alguno contra tal pronunciamiento.

De acuerdo con la doctrina que acabamos de citar, opinamos que sería injusto decretar la rescisión y nulidad del contrato, consideradas las circunstancias del caso. Al otorgar el contrato y al permitir a la demandada entrar a la finca y construir la torre y la línea de transmisión, sin exigirle el previo pago de un dólar, el causante de los demandantes indujo a la demandada a actuar de una manera definida y substancial, invirtiendo su dinero en la construcción de sus líneas transmisoras por el rumbo que ahora siguen y asumiendo la obligación de suministrar al público por medio de esas líneas luz y fuerza eléctricas. Estimamos que la actuación de la demandada, inducida por la promesa y por la actuación del causante de los demandantes, es causa o consideración suficiente para sostener la validez del contrato y la existencia de la servidumbre. Véanse: 13 C. J. sec. 150 C., pág. 315; *Hernández* v. *Fernández*, 17 D.P.R. 112, 115; *Martínez* v. *Cerezo*, 25 D.P.R. 709; *Meléndez* v. *Morales*, 43 D.P.R. 807.

 Convenimos con la apelante en que la demanda no aduce hechos suficientes para constituir una causa de acción

de rescisión por falta de causa en el contrato. El único perjuicio que los demandantes alegan haber sufrido es el de no haber recibido el pago del dólar convenido entre las partes como consideración estipulada por la concesión de la servidumbre. Al permitir que la demandada instalase la torre y la línea de transmisión, sin insistir en el previo pago del precio estipulado, el causante de los demandantes renunció a la condición de que el pago se hiciese con anterioridad a la toma de posesión y ejercicio del derecho de servidumbre, aún cuando no renunciara su derecho a reclamar el pago de la suma estipulada.

■■ Tampoco alega la demanda hechos suficientes para determinar una causa de acción sobre nulidad del contrato. En ella se alega que la demandada ejecutó las obras de instalación de la torre y líneas de transmisión y ejercitó el derecho de servidumbre concedídole por el contrato durante los siete años precedentes a la fecha de radicación de la demanda, sin que se alegue que durante todo ese lapso de tiempo los demandantes exigiesen el pago de un dólar como condición precedente al uso y disfrute de la servidumbre. Y se alega además que los demandantes practicaron gestiones para conseguir que la demandada trasladase la torre del sitio que ahora ocupa a otro designado por los demandantes. Todos esos hechos alegados por los propios demandantes equivalen a nuestro juicio a una confirmación del contrato que extingue la acción de nulidad, a tenor de lo dispuesto por el Artículo 1261 del Código Civil (ed. 1930).

■ En el tercer señalamiento dice la apelante que:

"3. La Corte erró al declarar que el sitio señalado por el causante de la Sucesión apelada esté en el mismo rumbo en que está la torre instalada, y que al no trasladar la apelante dicha torre al sitio designado, constituye una violación del contrato."

De acuerdo con la evidencia pericial ofrecida por la demandada, la torre se encuentra en línea recta, entre otras dos que están fuera de la finca de los demandantes, a 153 pies de distancia de una y de 304 pies de la otra. El sitio indi-

cado por los apelados a la apelante para el nuevo emplazamiento de la torre, se encuentra con relación a las otras dos torres situadas fuera de la finca, a 6 pies de distancia de una y a 451 pies de la otra. Luis Gandía, Jr., ingeniero jefe de la demandada, declaró en el interrogatorio directo como sigue:

"P. En caso de que esa torre fuese removida hacia la torre núm. 4 de la finca del Sr. Rosado, o sea en la colindancia entre los terrenos del Sr. Del Moral y el Sr. Rosado, o sea en este punto aquí, en el *Exhibit* J de la parte demandante que se marca a dos metros del número 1, ¿quedaría la torre en el mismo rumbo en que se encuentra actualmente?

"R. No, señor, no puede quedar.

"P. ¿Qué efecto tendría para la línea?

"R. Al cambiar esa torre de sitio a dos metros de la número uno, la distancia total sería 451 pies. Es lo que quedaría.

"P. ¿Eso sería entre torre y torre?

"R. Sí, señor.

"P. ¿Con cuál torre?

"R. Con la torre de la carretera, la número 3, y quedarían dos torres a 6 pies una de otra, y los 451 pies es una hamaca demasiado grande para una corriente de 22,000 voltios, según el código eléctrico.

"P. ¿Tendría posibilidad el servicio al cual está designada la torre ésa en la finca del Sr. Del Moral como parte de la línea de corriente eléctrica que conduce a esos pueblos de Hormigueros, Cabo Rojo, San Germán, Lajas y Sabana Grande, si esa torre se pusiese a seis pies de la torre del Sr. Rosado?

" . . . . . . . . .

"P. La pregunta es que si el servicio que está prestando o que prestaría la torre de la Mayagüez Light como parte de la línea de corriente eléctrica, lo seguiría prestando a los 6' de distancia de la torre del Sr. Rosado.

"R. Con dificultad, por la variación de la línea.

"P. ¿Se podría seguir utilizando la línea?

"R. No, señor, no se podría."

En repreguntas, contestó:

"P. Dígame una cosa, ¿dice Ud. que el poste, o sea la torre no puede removerse de donde está hacia el oeste?

"R. Puede.

"P. ¿Puede removerse?

"R. Sí, señor, puede removerse fácilmente al sitio de la colindancia del Sr. Rosado.

"P. ¿Donde señaló el finado don Damián del Moral?

"R. A ese sitio no puede.

"P. ¿Por qué no?

"R. Porque como dije, eso quedaría una hamaca entre torre y torre de 453 pies, que no es permisible por los códigos eléctricos. El fundamento es, primero, que los alambres quedan en una hamaca demasiado grande, y segundo, que quedarían los alambres haciendo circuitos los tres, porque cuando se cruza en una carretera, ya hay ciertos *standards* para la seguridad pública que exige mucho cuidado.''

Aparece también de la evidencia que la demandada estuvo siempre dispuesta a complacer al causante de los demandantes. Rodolfo Vera, administrador de la apelante, contestó a preguntas de su abogado así:

"P. ¿A qué sitio, a qué parte estaba dispuesta la compañía a realizar el trabajo en relación con la remoción?

"R. Con el fin de armonizar y complacer al Sr. Del Moral, le propusimos poner un poste de 60 pies y poco más adelante donde está la torre actual, o sea hacia el sud, o sea buscando la distancia con el otro poste, toda vez que si lo hubiese ido a rebajar tenía como 13 pies el promontorio ése.

"P. ¿Impedía el rebaje del terreno al poner ese poste que Uds. le proponían hacer?

"R. No, señor, por eso proponíamos un poste de 60 pies.

"P. ¿Impedía cualquiera nivelación del terreno que hiciera allí el Sr. del Moral?

"R. No, señor.

"P. ¿Aceptó el Sr. Del Moral eso?

"R. No, señor.

"P. ¿Lo rechazó?

"R. Sí, señor.''

La prueba demuestra, a nuestro juicio, que el emplazamiento de la torre en el sitio designado por el Sr. Del Moral haría imposible el uso de la servidumbre constituída por el contrato de 9 de marzo de 1927. Las leyes vigentes en la fecha en que se celebra un contrato forman parte de ese con-

trato. Es cierto que el Sr. Del Moral se reservó el derecho, que la ley le reconoce, de exigir a la compañía concesionaria el traslado de la torre a otro sitio dentro del mismo rumbo que el sitio que actualmente ocupa, cuando ese traslado fuere necesario para la nivelación del terreno. Pero ese derecho no puede ejercitarse arbitrariamente ni en forma tal que menoscabe o destruya el derecho de servidumbre concedido por el mismo contrato, sino con sujeción a lo dispuesto por el Código Civil en el siguiente artículo:

"Artículo 481.—El dueño del predio sirviente no podrá menoscabar de modo alguno el uso de la servidumbre constituída.

"Sin embargo, si por razón del lugar asignado primitivamente, o de la forma establecida para el uso de la servidumbre, llegare ésta a ser muy incómoda al dueño del predio sirviente o le privase de hacer en él obras, reparos o mejoras importantes, podrá variarse a su costa, siempre que ofrezca otro lugar o forma igualmente cómodos, y de suerte que no resulte perjuicio alguno al dueño del predio dominante o a los que tengan derecho al uso de la servidumbre."

La exigencia de que la torre fuese trasladada a un sitio que dista solamente seis pies de la otra torre situada cerca de la colindancia de la finca, mientras la aleja a 453 de la otra torre, equivale prácticamente a suprimir la torre en controversia y a destruir por completo el derecho de servidumbre.

La sentencia recurrida, por la que se ordena el cambio de la torre y línea de transmisión en la forma arbitraria exigida por los apelados, es errónea y contraria a derecho y debe ser revocada.

Admitida la existencia y validez del contrato de 27 de marzo de 1927, los demandantes están obligados de acuerdo con sus estipulaciones a elevarlo a escritura pública, para lo cual han sido requeridos por la concesionaria de la servidumbre. La corte inferior erró por lo tanto al declarar sin lugar la contrademanda.

*Por las razones expuestas se revoca la sentencia que dictó la Corte de Distrito de Mayagüez en 17 de junio de 1935, y*

*en su lugar debe dictarse otra desestimando la demanda, declarando con lugar la contrademanda de la Mayagüez Light, Power & Ice Co., Inc., y ordenando a los demandantes apelados otorgar escritura pública de concesión de servidumbre a favor de The Mayagüez Light, Power & Ice Co., Inc., de acuerdo con los términos del contrato de 27 de marzo de 1927. Decretada la validez y existencia legal del contrato de servidumbre y por tanto las de la obligación contraída por la Mayagüez Light, Power & Ice Co., Inc., de remover el poste del sitio donde está ahora enclavado y colocarlo en el sitio designado por la otra parte, siempre que esté en el mismo rumbo que el sitio actual, que se ajuste a las disposiciones legales sobre la materia y que no haga imposible el uso y disfrute de la servidumbre, procede devolver el caso a la corte inferior para nuevos y ulteriores procedimientos no inconsistentes con esta opinión, con el objeto de fijar la colocación del poste en cuestión en sitio y forma compatibles con la ley y con los derechos de ambas partes litigantes. Todo ello sin especial condenación de costas.*

El Juez Presidente Sr. Del Toro no intervino.