Don Quixote Hotel, Yacht and Golf Club, Inc., Hugh A. McPherson y su Esposa Mónica G. McPherson, peticionarios, *v.* Tribunal Superior, Sala de San Juan, Hon. Alfonso García Martínez, Juez, demandado; El Conquistador Hotel Corp., interventora.

*Número:* O-71-49   *Resuelto:* 2 de junio de 1971

*Luis A. Lugo, Jr.* y *L. C. Delucca,* abogados de los peticionarios; *Dubón & Dubón,* abogados de la interventora.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En el año 1966 el hotel El Conquistador, mientras construía un campo de golfo, destruyó una servidumbre de paso y otra de acueducto que existen sobre su propiedad a favor de unas parcelas de terreno propiedad de los demandantes. Como consecuencia de ello dejó sin agua y sin acceso a la residencia de los esposos McPherson, la cual está ubicada en una de esas parcelas.

La servidumbre de acueducto consistía, cuando fue destruida por la corporación interventora, de una tubería de 3,700 pies de largo. Esa tubería fue instalada por los demandantes McPherson para suministrar agua a su hogar y corría dicha instalación desde el camino municipal del barrio Las Cabezas, en Fajardo—camino que colindaba con la propiedad de los demandantes—hasta la residencia antes mencionada que está en la parte superior de una colina. Como parte de esa instalación los demandantes también construyeron un

tanque de agua e instalaron en la base de la colina una bomba eléctrica que impulsaba el agua hasta la residencia.

La servidumbre de paso antes mencionada se constituyó mediante la escritura número once, otorgada en San Juan en 14 de diciembre de 1960 ante el Notario Don José M. Menéndez Monroig, siendo el predio sirviente la propiedad de la interventora y el dominante una parcela de seis cuerdas propiedad de los esposos McPherson y en la cual tienen éstos su casa.

Luego de que la antes descrita tubería fue rota en julio de 1966 por las máquinas que allí utilizaba la interventora, los esposos McPherson la repararon a fin de tener servicio de agua en su casa pero el 30 de diciembre del mismo año la tubería fue rota nuevamente por las máquinas que allí trabajaban. Concluyó el Tribunal Superior en su opinión y sentencia, denominada Sentencia Parcial, de 15 de mayo de 1967, que el Sr. McPherson volvió a quejarse al gerente del Hotel El Conquistador por esta segunda destrucción de la tubería y la aquí interventora y allí demandada, El Conquistador Hotel Corporation, se negó a reparar la tubería a pesar de tener conocimiento de que la misma era la única fuente de suministro de agua de la residencia de los McPherson. (Determinación de Hecho Núm. 9 de la mencionada sentencia.)

También concluyó el Tribunal (Determinación de Hecho Núm. 10) que "Al encontrarse su residencia privada del servicio de agua el señor McPherson trató de conseguir que Acueductos le suministrara agua mediante camiones-tanques, pero los únicos que había disponibles en el área de Fajardo estaban siendo utilizados por el Hotel El Conquistador. El 2 de enero de 1967 McPherson conectó el agua que tenía acumulada en su piscina al sistema sanitario de su casa para operar el mismo. Se vio precisado a llevar agua potable para las necesidades básicas de su hogar por conducto de botellas de cristal grandes de agua mineral que compraba en el pueblo. Para el lavado de la ropa, su esposa tenía que trasladarse a

Fajardo o a casa de vecinos y esta situación continuó hasta el día de la vista cuando el nivel del agua en la piscina del señor McPherson ya había llegado a su nivel mínimo."

En la vista del caso que dio margen a la antes citada sentencia, la interventora admitió la existencia de la servidumbre de paso a favor de los demandantes y admitió haber alterado el curso del camino pero negó que el mismo se hubiese hecho más gravoso. Los demandantes controvirtieron con prueba la posición de la interventora y probaron, a satisfacción del tribunal, que el nuevo camino crudamente construido por la interventora resulta más gravoso para los demandantes y que es empinado en forma tal que resulta peligroso cuando dicho camino está mojado.

Con motivo de los hechos antes relatados los demandantes instaron una acción sobre *injunction*, confesión de servidumbres y daños y perjuicios contra la aquí interventora. Se celebró la vista en el Tribunal Superior el 20 de marzo de 1967 para dilucidar los aspectos del *injunction* y de confesión de servidumbres planteadas en el caso. En su citada sentencia de 15 de mayo de 1967 el tribunal llegó a determinaciones de hecho claras y precisas e hizo las correspondientes conclusiones de derecho, favorables a los demandantes, algunas de las cuales hemos citado. Como señalamos antes, la servidumbre de paso había sido debidamente constituida mediante escritura pública y en cuanto a la servidumbre de acueducto el tribunal concluyó que a tenor con nuestro derecho sobre servidumbres la misma había quedado definitivamente establecida en la forma antes mencionada. Esto es, el predio sirviente es la propiedad de la interventora y el predio dominante la de los demandantes.

En vista de lo anterior el Tribunal Superior declaró con lugar la demanda en cuanto a la solicitud para que se declarase la existencia de las servidumbres de paso y de acueducto y también con lugar en cuanto a la solicitud de *injunction* permanente en relación con la no interrupción de la servi-

dumbre de acueducto. Ordenó a la interventora a restituir la tubería que atraviesa los terrenos de su finca al estado original en que se encontraba cuando ella la destruyó y también le ordenó a la interventora a abstenerse permanentemente de intervenir con el uso de la servidumbre de paso existente a favor del predio de los demandantes y le ordenó restituir a dicho camino el declive gradual y seguro que tenían con anterioridad a la intervención de la allí demandada y aquí interventora. El tribunal no falló sobre la reclamación de daños y perjuicios, reclamación que dejó pendiente y por eso, sin duda, titula "Sentencia Parcial" a su sentencia.

Luego de dictada la mencionada sentencia parcial la interventora presentó una moción de reconsideración solicitando que se eliminara como codemandada a El San Juan Hotel Corporation, que el tribunal hiciese una inspección ocular del camino que da acceso a la casa de los demandantes y quejándose de que el tribunal ordenara la restitución de la tubería que atraviesa los terrenos de El Conquistador Hotel Corporation al estado original en que aquella se encontraba, esto es, por encima del terreno, cuando—argumentó la interventora—ella ha construido en esos terrenos un campo de golfo. Dicha moción de reconsideración fue señalada para vista pero por razones ajenas a la voluntad de las partes y relacionadas solamente con los procedimientos administrativos de la Rama Judicial de Puerto Rico (el juez que entendía en el caso fue trasladado a otra Sala) dicha vista fue suspendida por el tribunal a quo y no fue resuelta hasta dos años más tarde en la forma en que se dirá más adelante.

Durante la vista del caso celebrada, como hemos dicho, el 20 de marzo de 1967, la interventora estipuló que tan pronto terminara la construcción del campo de golfo restituiría el camino que constituye la servidumbre de paso *a su condición original*. No solamente no hizo eso, sino que lo que la interventora hizo fue construir un parque de estacionamiento en el lugar por donde discurría el camino original de acceso a la

casa de los McPherson, todo esto en crasa violación de lo estipulado. También mediante el uso de una pala mecánica abrió por otro lugar un camino de tierra, difícil y peligroso, con el que pretendía darle acceso a la residencia de los demandantes.

En 12 de mayo de 1969, a los dos años vencidos de haber dictado su sentencia en este caso, el tribunal recurrido dictó una resolución en relación con la moción de reconsideración antes mencionada de la interventora mediante la cual eliminó al San Juan Hotel Corporation como parte codemandada, accedió a la solicitud de la interventora de que la servidumbre de acueducto se instalase bajo tierra y, luego de reiterar la corrección de las determinaciones de hecho consignadas en su sentencia de 15 de mayo de 1967, se expresó como sigue:

"Una revisión de la prueba presentada, así como la inspección ocular informal que hiciéramos, nos convence de que no solo fue agudizada dicha pendiente y se hizo el tránsito a través del camino más gravoso, sino que *en contra de lo estipulado* por la parte demandada y durante el tiempo transcurrido entre la fecha en que se dictó la sentencia parcial y la fecha de la inspección ocular, dicha parte demandada construyó un área de estacionamiento en el sitio por donde discurría el camino de acceso y varió dicho camino en forma tal que los vehículos que se aproximan al mismo desde el oeste por la carretera del Hotel no pueden entrar al mismo virando inmediatamente hacia la izquierda, sino que tienen que ir hasta el Hotel, virar y aproximarse desde el este. Pudimos constatar además en dicha inspección ocular que la parte por donde se ha desviado el camino es distinta a la que anteriormente había, ya que el camino anterior tenía una base sólida mientras que el desvío que se ha hecho es de barro. La parte demandada había informado al Tribunal durante la vista que dio lugar a la sentencia parcial *que el camino sería restituido a su situación original* tan pronto se terminara la construcción del campo de golf y nunca informó que se fuera a construir área de estacionamiento alguna por donde dicho camino pasaba. El camino debe ser restituido a su situación original." (Bastardillas nuestras.)

Transcurrido el término para solicitar revisión y para apelar de la sentencia parcial, según quedó modificada por la resolución antes mencionada de 12 de mayo de 1969, la sentencia se convirtió en final, firme y ejecutoria. Luego de algún tiempo los demandantes trataron de lograr mediante sendas mociones la ejecución de la sentencia y esto dio lugar a la celebración de una vista en 22 de agosto de 1969 para la discusión de dichas mociones, a la cual compareció *únicamente* la parte demandante. A solicitud del tribunal se llevó a cabo un estudio por una firma de ingenieros y se prepararon especificaciones y planos para la restitución del camino a su condición original.

A pesar del tiempo transcurrido y a pesar de los inconvenientes físicos y mentales que los demandantes llevaban sufriendo por más de dos años el tribunal a quo decidió hacer una segunda inspección ocular, la cual llevó a cabo en 9 de junio de 1970. En dicha fecha el tribunal cambió los términos de la sentencia, ya final y firme, de 15 de mayo de 1967 y autorizó a la interventora a construir el camino de conformidad con un plano preparado por la interventora. Añadió que practicaría una nueva inspección una vez terminado el trabajo y que sólo lo aprobaría si el mismo era adecuado y cómodo para los usos de la propiedad de los demandantes. Como los daños ocurrieron en el 1966 y la demanda data de febrero de 1967, el resultado de todo lo relatado es que luego de los perjudicados haber estado litigando por tres años y medio, y a pesar de haber obtenido una sentencia ya final y firme a su favor, en 9 de junio de 1970 se encontraron otra vez al pie de la penosa y costosa pendiente que habían trabajosamente ascendido.

Los demandantes, aquí peticionarios, hacen el siguiente señalamiento de error: "Incurrió en error manifiesto la Hon. Sala de San Juan del Tribunal Superior al negarse ordenar la ejecución de una sentencia parcial, final, firme y ejecutoria y ordenar que se cumplan pronunciamientos contenidos en un

acta de inspección ocular que son contrarios a lo dispuesto en la sentencia final, firme y ejecutoria, antes mencionada."

Por su parte, la interventora nos dice que la servidumbre de paso resulta incómoda y gravosa para ella y que a tenor con el Art. 481 del Código Civil, 31 L.P.R.A. sec. 1673, debe permitirse que dicha servidumbre se cambie de lugar.

Los hechos de este caso y el citado precepto de ley nos presentan un interesante problema de aplicación del derecho, pero veamos primero lo que exactamente dispone el citado Art. 481 del Código Civil. Dicho artículo lee como sigue:

"El dueño del predio sirviente no podrá menoscabar de modo alguno el uso de la servidumbre constituida.

Sin embargo, si por razón del lugar asignado primitivamente, o de la forma establecida para el uso de la servidumbre, llegare ésta a ser muy incómoda al dueño del predio sirviente o le privase de hacer en él obras, reparos o mejoras importantes, podrá variarse a su costa, siempre que ofrezca otro lugar o forma igualmente cómodos, y de suerte que no resulte perjuicio alguno al dueño del predio dominante o a los que tengan derecho al uso de la servidumbre."

■ Véase que lo primero que se encarga dicho artículo de dejar claro es que el dueño del predio sirviente no puede menoscabar de modo alguno el uso de la servidumbre. En segundo lugar establece el citado precepto de ley que cuando la servidumbre llegare a ser *muy* incómoda—no dice meramente incómoda porque incómoda siempre lo es—al dueño del predio sirviente, podrá variarse a su costa siempre que ofrezca otro lugar igualmente cómodo y que no cause perjuicio al dueño del predio dominante. De manera que para que pueda solicitarse con éxito un cambio en la servidumbre —salvo pacto en contrario, claro está—dos de las condiciones que tienen que concurrir son que se ofrezca un lugar igualmente cómodo que el original y que el cambio no cause perjuicio al dueño del predio dominante.

En este caso, contrario a la letra y al espíritu del Art. 481: (1) el dueño del predio sirviente menoscabó—

destruyó—la servidumbre de ·paso; (2) luego la pretendió sustituir con una considerablemente más incómoda y peligrosa; y (3) causando con ello perjuicio al dueño del predio dominante. Además, (4) dicho Art. 481 no presume que basta que el dueño del predio sirviente crea que la servidumbre le resulta muy incómoda o que le priva de hacer obras importantes para que él, unilateralmente y sin previas conversaciones y tratos con el dueño del predio dominante proceda a llevar a cabo el cambio. Eso equivaldría a autorizar a alguien a tomarse la justicia por su mano. El derecho existe para sacar al hombre de la jungla y no para meterlo en ella. Tomarse la justicia por la mano equivale a volver al estado primitivo de la jungla. Ya en *Sucn. Del Moral* v. *Mayagüez Lt., P. & Ice Co.*, 54 D.P.R. 150, 161 (1939), interpretando precisamente dicho Art. 481 expresamos que ese derecho condicionado que reconoce la ley al dueño del predio sirviente no puede ejercitarse arbitrariamente ni en forma que menoscabe o destruya la servidumbre. Y en *Manrique* v. *Álvarez*, 58 D.P.R. 74, 77 (1941), luego de reconocer que el Art. 481 permite que se varíe la servidumbre cuando se dan las circunstancias allí expresadas, dijimos:

"Pero ¿quién es el árbitro que determina si la variación perjudica o no al dueño del predio dominante? ¿Es acaso el dueño del predio sirviente? ¿Lo es el del dominante? Ni uno ni otro. Esa facultad corresponde a los dos de consuno, y si no existiere acuerdo o conformidad entre ellos, a la autoridad judicial."

El asunto es claro y, desde luego, ese también es el criterio de los comentaristas. Manresa, *Comentarios al Código Civil Español*, Tomo IV, 6ta. ed. (1951), pág. 699; Scaevola, *Código Civil*, Tomo X, 5ta. ed. (1947), pág. 473.

■ Nada de lo anterior contradice el principio general de que la servidumbre de paso debe darse por el punto menos perjudicial al predio sirviente siempre y cuando que sirva adecuadamente su propósito, principio que claramente aplica al caso de una finca enclavada cuyo dueño exige paso al de

una heredad vecina. Arts. 500 y 501 del Código Civil, 31 L.P.R.A. secs. 1731 y 1732. Aquí no se trata de darse o de establecerse inicialmente la servidumbre en cuestión, sino que en este caso había una servidumbre debidamente establecida, bilateralmente y mediante escritura pública. De lo que aquí se trata, igual que en *Manrique* v. *Álvarez*, supra, es del predominio de la ley y de la indudable sujeción a ésta de las partes. Ninguna de ellas podía variar unilateralmente la servidumbre.

Nótese que el espíritu que informa el segundo apartado del Art. 481 es uno de razonabilidad, de lo que es justo, de lo que es equitativo. El Código Civil contiene referencias expresas a la equidad. Así por ejemplo, nuestro Art. 1108 (31 L.P.R.A. sec. 3133) autoriza al juez para modificar "equitativamente" la pena cuando la obligación principal hubiera sido cumplida en parte por el deudor. Igualmente el Art. 1581 (31 L.P.R.A. sec. 4352) autoriza a los socios a impugnar la repartición de las ganancias y. pérdidas cuando se haya faltado "a la equidad."

Más numerosos son, sin embargo, los preceptos del Código que se remiten a la equidad en forma tácita. Por ejemplo, el Art. 1801 habla de "causa justa"; el Art. 1077 habla de "causas justificadas"; el Art. 1598 habla de "justo motivo"; el Art. 332 habla de "gravemente perjudicial"; el Art. 1056 permite al juez moderar la responsabilidad que proceda de negligencia en el cumplimiento de las obligaciones; el Art. 1081 faculta al tribunal para fijar el plazo cuando una obligación no lo señalare; el Art. 1617 permite al tribunal estimar "con más o menos rigor" la responsabilidad del mandatario; el Art. 1210 remite "a la buena fe"; y los Arts. 1057, 1445, 1701 y 1789 remiten a la diligencia de un buen padre de familia. [1]

---

[1] Los artículos del Código Civil antes citados se encuentran, en el orden en que aparecen citados, en 31 L.P.R.A. secs. 5127, 3052, 4398, 1277, 3020, 3064, 4449, 3375, 3021, 4052, 4774, 5102.

Lo anterior no es nada nuevo. Ningún estudioso del Derecho ha de sorprenderse al encontrarse una vez más con la realidad de que lo que da vida al Derecho—tanto al Derecho positivo como al casuístico—es la idea de lo justo, de lo equitativo. Como hemos señalado antes, "las ideas de justicia y equidad son esenciales y consustanciales a la noción del Derecho, el cual dejaría de cumplir sus finalidades morales y sociales si no aspirase a realizar la justicia y no una justicia abstracta y teórica, sino una justicia realista y humana acorde a las circunstancias de cada caso." *García Colón* v. *Srio. de Hacienda*, 99 D.P.R. 779 (1971); *Piovanetti Doumont* v. *Martínez*, 99 D.P.R. 663 (1971); *Silva* v. *Comisión Industrial*, 91 D.P.R. 891 (1965). Como es bien sabido, quien viene en busca de equidad debe traer las manos limpias. Mal puede la interventora apoyarse en el argumento de que la servidumbre de paso le resulta onerosa cuando fue ella misma quién creó esa condición onerosa a sabiendas y, pero aun, en clara violación de lo estipulado.

■ El error señalado se cometió. Debe ser obvio que la justicia en este caso está de parte de los demandantes. Sus derechos de propiedad y su tranquilidad personal fueron invadidos y lesionados repetidas veces por la interventora. Aquellos recurrieron al único recurso que nuestra sociedad permite: acudir a la protección de la ley y de los tribunales. Esta incierta, lenta y costosa protección, luego de legítimamente lograda, no puede desmantelarse excepto por razones muy graves, las cuales aquí no concurren. Erró el tribunal de instancia abusando de su discreción al alterar injustificadamente una sentencia, dictada previo un juicio en su fondo y la cual, conforme a las normas de nuestro Derecho positivo, se ha tornado final y firme.

■ En *Srio. del Trabajo* v. *Tribunal Superior*, 95 D.P.R. 136, 140 (1967), dijimos que es generalmente reconocida la norma de que las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones con-

sideradas y decididas y que dichas determinaciones generalmente obligan tanto al tribunal de instancia *como al que las dictó* si el caso vuelve a su consideración. También se reconoce que si el Tribunal entiende que la ley del caso antes establecida es errónea y que puede causar una grave injusticia, el Tribunal puede aplicar una norma de derecho diferente a fin de resolver en forma justa. En el caso de autos la ley del caso, que es la contenida en la sentencia de 15 de mayo de 1967 según aclarada o enmendada por la resolución de 12 mayo 1969, ni es errónea ni causa grave injusticia. Por el contrario, además de ser correcta reivindica la vigencia del derecho en esta situación, vigencia que había sido lesionada por la transgresión de la interventora.

Por las razones antes expuestas, *se revocará la resolución del Tribunal Superior, Sala de San Juan, dictada en este caso en 1ro. de febrero de 1971 y se dictará sentencia ordenando a la interventora a cumplir la sentencia parcial dictada en este caso en 15 de mayo de 1967, según completada por su resolución de 12 de mayo de 1969.*

El Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Pérez Pimentel y Hernández Matos no intervinieron.