ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| ALPHA DEMOLITIONS, INC.<br><br>Apelante<br><br>v.<br><br>UNIVERSIDAD DE PUERTO RICO<br><br>Apelada | KLAN202500102 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm. SJ2023CV00283<br><br>Sobre: *Incumplimiento de Contrato* |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de mayo de 2025.

Comparece Alpha Demolitions, Inc. ("Alpha" o "Apelante") mediante *Apelación* y solicita que revoquemos la *Sentencia* emitida el 5 de enero de 2025 y notificada el 9 de enero de 2025, por el Tribunal de Primera Instancia, Sala Superior de Humacao ("TPI"). Mediante el referido dictamen, el TPI le ordenó a la Universidad de Puerto Rico ("UPR" o "Apelada") pagar lo adeudado, por concepto de las obras realizadas y acreditadas por Alpha, como parte de lo acordado mediante contrato de servicios.

Por los fundamentos que expondremos a continuación, se *Confirma* el dictamen apelado.

**I.**

El 16 de enero de 2023, Alpha presentó una *Demanda* sobre incumplimiento contractual y cobro de dinero en contra de la UPR. La parte apelante expresó que fue el licitador agraciado de la Subasta SHE-UPRH-2021-003, para un proyecto de Higienización y Remediación de ciertas facilidades de la UPR, Recinto de Humacao. En síntesis, Alpha arguyó que, en virtud del contrato otorgado, tenía derecho a una suma a precio alzado o *lump sum* una vez completado el proyecto. Así dispuesto, la Apelante reclamó el pago de $305,300.50, hasta la cuantía máxima del contrato, más

$119,949.00, equivalente al 10% retenido de lo que ya había sido debidamente certificado y pagado por la UPR.

Por su parte, el 12 de mayo de 2023, la UPR notificó su *Contestación a la Demanda*. La Apelada sostuvo que el contrato establecía el pago de una cuantía máxima, no global, de $1,504,790.50, por el trabajo realizado. Cónsono con lo anterior, señaló que en nuestro ordenamiento las agencias gubernamentales únicamente deben pagar por los servicios rendidos. Por tanto, arguyó que, exigir un pago total, independiente de los trabajos realizados, atentaba contra las regulaciones aplicables a los contratos gubernamentales. Además, la UPR expresó que, hasta el momento, había efectuado el pago de $1,199,482.92, correspondiente a los servicios prestados y facturados en virtud del contrato, y que habían sido debidamente acreditados por la parte apelante.

Tras varios trámites procesales, el 1 de septiembre de 2023, Alpha instó una *Moción Solicitando Sentencia Sumaria*. Atinente a la controversia ante nos, la parte apelante expresó que, conforme al Pliego de Subasta, la UPR le pagaría al contratista, como compensación por la realización de los trabajos, el precio a suma alzada o precio fijo que sería negociado y estipulado entre las partes. De igual manera, señaló que, el contrato estipulaba que la UPR solo compensaría a Alpha por los servicios rendidos o prestados a satisfacción, mediante la presentación mensual de una certificación de gestión realizada, la cual debía ser aprobada por la UPR.

En oposición, el 25 de septiembre de 2023, la UPR notificó su *Moción en Oposición de Sentencia Sumaria y para que se dicte Sentencia Sumaria a favor de la Universidad de Puerto Rico*. La parte apelada adujo que, el Pliego de Subasta establecía las alternativas para fijar el pago de los servicios, pero que el método de pago siempre estuvo sujeto a como fuese estipulado o negociado por las partes. Además, la UPR reiteró que, en el caso de autos, se acordó el pago de una suma máxima de $1,504,790.50. Es decir, que la UPR podría pagarle a Alpha hasta dicha cantidad, a medida en que los trabajos fueran realizados y evidenciados. Por todo lo cual, la parte apelada

solicitó que se dictara una sentencia sumaria a su favor, a los efectos de ordenarle a Alpha a entregar cualquier factura por servicios debidamente prestados, para así proceder con las correspondientes certificaciones y el desembolso de las cuantías adeudadas.

Ponderadas las solicitudes de las partes y sus correspondientes réplicas, el foro de instancia dictaminó una *Resolución*, notificada el 8 de enero de 2024. El TPI realizó las siguientes determinaciones de hechos:

1. En 2021, la UPR, Recinto de Humacao, publicó la Subasta SHE-UPRH-2021-003 para un proyecto de limpieza, higienización y remediación de hongos en varios edificios de la UPR-Humacao.

2. Durante finales de 2021 y principios de 2022, Alpha participó en la Subasta SHE-UPRH-2021-003.

3. El pliego de subasta de UPR-Humacao estableció que la contratación de los servicios de Alpha sería por un precio a suma alzada que sería según negociado y estipulado por las partes.

4. El contrato entre Alpha y UPR establece que la realización del proyecto fue adjudicada por la cantidad máxima de $1,504,790.50 (inciso segundo).

5. El artículo 16.1 del contrato entre Alpha y UPR establece que **UPR solo compensará a Alpha por servicios rendidos o prestados a satisfacción, mediante presentación de certificación mensual** de la gestión realizada y que luego de aprobada UPR pagará a Alpha la suma correspondiente. También, que **la totalidad de los servicios facturados no será mayor que la "suma global estipulada" de $1,504,790.50** cuya cantidad se certifica como disponible para pagar la totalidad de los servicios y labores bajo este contrato.

6. En su propuesta, Alpha detalló por separado cada uno de los servicios cubiertos por la Subasta, para cada uno de los edificios.

7. La UPR ha desembolsado pagos ascendientes a $1,199,482.92 por los servicios efectivamente prestados y facturados en virtud del Contrato Núm. 2022-000056 y la propuesta presentada por Alpha y que han sido debidamente certificados por M2A.[1]

(Énfasis suplido)

Como resultado, el foro apelado declaró *No Ha Lugar* la solicitud de sentencia sumaria instada por Alpha. Además, decretó *Ha Lugar* la solicitud de la UPR, a los efectos de disponer que la Apelada solo tenía la obligación de pagar por los servicios cuya certificación de gestión hubiera sido presentada por Alpha y aprobada por la UPR.

---

[1] Apéndice de la parte apelante, págs. 12-13.

El 16 de septiembre de 2024 se celebró el juicio en su fondo. Previo a su inicio, el Juez les advirtió a las partes que el desfile de prueba debía ser dirigido a evidenciar los pagos que quedaban pendientes, toda vez que lo demás ya había sido adjudicado en la *Resolución* del 8 de enero de 2024. Cónsono con lo anterior, Alpha presentó el testimonio de Antonio Medina Eliza, representante de Alpha. Por su parte, la UPR presentó el testimonio de Marcos Pérez, representante de la UPR, y el ingeniero Manuel Bermúdez. Entre la prueba documental admitida como *exhibits*, se encontraban las certificaciones de pago presentadas por Alpha y pagadas por la UPR, así como la Certificación Núm. 4, presentada el 25 de enero de 2024, por la parte apelante.

Culminado el desfile de prueba, la UPR presentó una solicitud de desestimación o *non suit*, al amparo de la Regla 39 de Procedimiento Civil, 32 LPRA Ap. V, R. 39. La Apelada aseveró que la controversia umbral versaba sobre el pago de $305,000.00, reclamados por Alpha a través de la Certificación Núm. 4, como parte de unos trabajos presuntamente completados. No obstante, argumentó que, del testimonio de la parte apelante no surgió evidencia suficiente que justificara la cuantía reclamada en dicha certificación.

El 16 de octubre de 2024, la UPR reiteró su solicitud de desestimación mediante un *Memorando de Derecho en apoyo a la Solicitud de Moción de Desestimación al amparo de la Regla 39.2 (c) de Procedimiento Civil*. En oposición, el 23 de octubre de 2024, Alpha presentó un *Memorando*. Mediante su escrito, la Apelante arguyó que, según lo determinado en la *Resolución* del 8 de enero de 2024, el contrato fue a suma alzada, por lo que, la Apelada venía obligada a realizar el pago global acordado.

Consecuentemente, el 8 de enero de 2025, el TPI emitió una *Sentencia*, notificada al día siguiente. El foro de instancia concluyó que, además de que no surgía evidencia que suscitara el pago de lo facturado en la Certificación Núm. 4, Alpha había admitido que no realizó las obras según fueron facturadas. A raíz de lo anterior, desestimó la reclamación de la parte

apelante, en cuanto al pago de lo alegado en la Certificación Núm. 4. Así pues, ordenó a la UPR a efectuar los pagos correspondientes a lo debidamente certificado, más el 10% retenido de los trabajos ya pagados y certificados.

Por otro lado, en cuanto al reclamo de que se había pactado a precio alzado, el foro de instancia manifestó que, tal controversia había sido adjudicada mediante la *Resolución* del 8 de enero de 2024. Añadió que, el referido dictamen advino final y firme, por lo que constituía la Ley del Caso.

Inconforme, el 7 de febrero de 2025, Alpha acudió ante nos mediante *Apelación*. El Apelante le imputó al foro de instancia la comisión del siguiente error:

> **Erró el TPI al determinar que la contratación no fue a suma alzada, sino a precio unitario, a pesar de que: (1) el pliego de subasta y el contrato solamente se refieren a suma alzada y no mencionan el concepto de precio unitario; (2) el pliego y el contrato contienen términos que le imponen al contratista las obligaciones clásicas y a la UPR los beneficios clásicos de un contrato con precio a suma alzada; (3) el inspector de la UPR y la decana certificaron todos los trabajos de ALPHA como contratados a satisfacción de la UPR[;] (4) el propio TPI ya había determinado que el contrato era a suma alzada en la resolución del 8 de enero de 2024 y; (5) UPR no logro rebatir la presunción de nuestro Código Civil de que salvo pacto distinto, se presume que la obra se contrata por precio alzado.**

El 28 de febrero de 2025, la UPR presentó la transcripción de la prueba oral ("TPO"), la cual aceptamos en su totalidad. Conforme a la TPO, el 5 de marzo de 2025, Alpha notificó su alegato suplementario. Finalmente, el 27 de marzo de 2025, la UPR instó su *Oposición a Apelación*. Perfeccionado el recurso y contando con el beneficio de la TPO y la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

La doctrina de la "Ley del Caso" es una manifestación necesaria y conveniente del principio reconocido de que las adjudicaciones deben tener fin. *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136, 141 (1967). Es doctrina reiterada en nuestro sistema que los derechos y obligaciones

adjudicadas en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. *Mgmt. Adm. Serv. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). Dicho de otra manera, de ordinario los planteamientos que han sido objeto de adjudicación por el foro de instancia o por el foro apelativo no pueden reexaminarse.

A fines de velar por el trámite ordenado y pronto de los litigios, así como por la estabilidad y certeza del derecho, un tribunal de instancia, como una cuestión de sana práctica y no como regla inviolable, debe resistirse a alterar sus pronunciamientos dentro de un mismo caso excepto cuando se convenza de que los mismos son erróneos. *Mgnt. Adm. Servs. Corp. v. E.L.A.*, *supra*, pág. 608, citando a *Torres Cruz v. Municipio de San Juan*, 103 DPR 217, 22 (1975). Dichas determinaciones, como regla general, "obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve a su consideración". *Srio. del Trabajo v. Tribunal Superior, supra*, pág. 140.

No obstante, el derecho común preceptúa que un segundo juez no está irremisiblemente obligado a mantener incólume la decisión de un primer juez de igual nivel dentro del mismo caso. *Torres Cruz v. Municipio de San Juan, supra*, pág. 222. El Tribunal Supremo ha reconocido que "si el Tribunal entiende que la ley del caso antes establecida es errónea y que puede causar una grave injusticia, el Tribunal puede aplicar una norma de derecho diferente a fin de resolver en forma justa". *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 29-30 (1971). Por otro lado, nuestro más alto foro ha reiterado que la doctrina de la ley del caso es una "al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados manifiestamente injustos". *Noriega v. Gobernador*, 130 DPR 919, 931 (1992), citando a *Estado v. Ocean Park Dev. Corp.*, 79 DPR 158, 174 (1956) y otros.

**-B-**

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende, en gran medida, de la exposición del juzgador de los hechos a la prueba presentada, lo cual incluye, ver el comportamiento del

testigo y escuchar su voz, mientras ofrece su testimonio. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* 209 DPR 759, 778 (2022). De ahí que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, salvo que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd.* Cuando la alegación es de pasión, prejuicio o parcialidad, el llamado a los foros apelativos es verificar, primordialmente, si el juzgador de los hechos cumplió con su función de adjudicar de manera imparcial. *Gómez Márquez et al. v. El Oriental Inc.*, 203 DPR 783, 793 (2020). Solo así podremos apoyar sus determinaciones de hechos. *Íd.*

Por otro lado, constituye error manifiesto cuando, de un análisis de la totalidad de la evidencia, el foro apelativo se convence de que se cometió un error, independientemente de que exista evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd.* De manera que, la facultad de los foros apelativos para sustituir el criterio de los tribunales de instancia se limita a aquellos escenarios, en los cuales, de la prueba admitida no surge base suficiente que apoye su determinación. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra. Como se sabe, las diferencias de criterio jurídico no alcanzan dicho estándar. *Íd.*

Como vemos, nuestro esquema probatorio está revestido de un manto de deferencia hacia las determinaciones de credibilidad que realizan los juzgadores de instancia, con respecto a la prueba testifical presentada ante sí. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 146-147 (2020). Lo anterior, en reconocimiento a la oportunidad que tiene el foro primario de ver y observar a los testigos declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones con el efecto de ir formando gradualmente, en su conciencia, la convicción sobre si dicen o no la verdad. *Íd.*, págs. 857-858.

**III.**

La parte apelante señala que el foro de instancia incidió al determinar mediante la *Sentencia* apelada que el contrato entre las partes no fue pactado a suma alzada. Aclaramos que, tal controversia fue resuelta mediante una *Resolución* del 8 de enero de 2024, la cual advino final y firme, sin que las partes solicitaran su reconsideración o revisión mediante *certiorari*, constituyendo así la Ley del Caso.

Conforme surge del expediente, Alpha y la UPR, respectivamente, presentaron solicitudes de sentencia sumaria. Mediante *Resolución* del 8 de enero de 2024, el foro de instancia declaró No Ha Lugar la solicitud instada por Alpha y, en cambio, declaró Ha Lugar la petición de la UPR. Como corolario, el TPI desglosó una serie de hechos materiales que no se encontraban en controversia. Atinente a la controversia ante nos, el foro de instancia determinó lo siguiente:

> 5. El artículo 16.1 del contrato entre Alpha y UPR establece que **UPR solo compensará a Alpha por servicios rendidos o prestados a satisfacción**, mediante presentación de certificación mensual de la gestión realizada y que luego de aprobada UPR pagará a Alpha la suma correspondiente. [...][2]

> (Énfasis suplido)

Cónsono con lo anterior, el TPI concluyó que, según el contrato, la Apelada solo tenía la obligación de pagar por los servicios cuya certificación de gestión realizada hubiera sido presentada por Alpha y certificada o aprobada por la UPR. Asimismo, manifestó que, como cuestión umbral, solo procedía evidenciar los trabajos realizados, con la intención de que la UPR devengara las cuantías adeudadas a Alpha.

Tras examinar la transcripción de la prueba oral, constatamos que, previo al inicio del desfile de prueba, el foro primario les recordó a las partes que el juicio estaría encaminado a determinar la cuantía adeudada por la UPR, en virtud de los trabajos realizados y evidenciados.[3] A su vez, el TPI rechazó el intento de Alpha de discutir la controversia relacionada al precio alzado, de la siguiente manera:

---

[2] Apéndice de la parte apelante, pág. 13.
[3] TPO, pág. 6, líneas 50-57.

**LCDO. OLMO [Alpha]:** Oiga y le pregunto, ¿qué porciento de esos contratos sería a precio alzado o *Lump Sum*?

**LCDO. ORONA [UPR]:** Objeción. Vuestro honor, la línea de preguntas va dirigida a una controversia que ya resolvió este Tribunal, en la Resolución del 8 de enero de 2024. [...]

**JUEZ SUPERIOR:** Licenciado, yo fui bien enfático, Ha Lugar la, yo fui bien enfático licenciado, yo no voy aquí a entrar sobre si existe un contrato o no porque ya se dio por la existencia. **Vamos directamente a los trabajos realizados que no fueron según la alegación, no fueron satisfactoriamente pagados y eso es lo que quedó pendiente de la Resolución del caso del 8 de enero de 2024.** Que no se llevó en apelación, así que esa sería el ruling de este juicio. Con relación a eso directamente licenciado, se van a permitir preguntas.[4]

(Énfasis suplido)

En otras palabras, en reiteradas ocasiones el foro apelado recalcó que solo estaría adjudicando lo que no fue resuelto mediante la *Resolución* del 8 de enero de 2024. De tal modo que, ya había sido decretado que las partes no habían acordado un precio alzado.

Según hemos discutido, como norma general, la doctrina de la Ley del Caso estipula que, a menos que la decisión se considere errónea y pueda ocasionar una injusticia, el Tribunal no deberá alterarla. Somos del criterio que, en el caso de autos, no acontecieron las excepciones que le permitían al foro de instancia modificar la Ley del Caso. Por las razones expuestas, concluimos que, el foro de instancia no incidió al no entrar a dirimir, nuevamente, la controversia relacionada al precio alzado.

**IV.**

Por los fundamentos que anteceden, se *Confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] TPO, pág. 15, líneas 244-258.