ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARLOS MANUEL QUIÑONES Y OTROS<br>Peticionarios<br><br>v.<br><br>ANA HILDA MEJIA SOTO<br>Recurrida<br><br>ANA HILDA MEJIA SOTO<br>Demandante<br><br>v.<br><br>DIEGO CHEVERE COLÓN Y OTROS<br>Demandados | KLAN202301008 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. FAC2013-4231 FAC2014-2089<br><br>Sobre: NIVELACIÓN, REEMBOLSO, ENRIQUECIMIEN-TO INJUSTO, COBRO DE DINERO, NULIDAD DE DONACIONES, SENTENCIA DECLARATORIA, CUOTA VIUDAL, LEGADO Y DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la Jueza Rivera Marchand, el Juez Rodríguez Flores y la Jueza Prats Palerm[1].

Prats Palerm, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 26 de febrero de 2024.

Comparece ante nosotros los señores Carlos Manuel Quiñones González y Carlos Rafael Quiñones González (en adelante, ¨hermanos Quiñones¨ o ¨peticionarios¨) mediante recurso de *Apelación*[2]. Solicitan la revocación de una *Resolución y Orden* dictada el 10 de octubre de 2023 y notificada el 11 de octubre de 2023 por el Tribunal de Primera Instancia, Sala de Carolina (en

---

[1] Mediante Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designa a la Hon. Annette M. Prats Palerm en sustitución de la Hon. Sol de Borinquen Cintrón Cintrón.

[2] Mediante Resolución del 14 de noviembre de 2023 se acogió como *Certiorari*.

adelante, ¨TPI¨) en los casos consolidados F AC2013-4231 y F AC2014-2089. Mediante el referido dictamen, el TPI dejó sin efecto una *Sentencia Enmendada* dictada el 5 de julio de 2023, notificada el 12 de julio de 2023.

Por los fundamentos que expondremos a continuación, denegamos la expedición del recurso de *Certiorari.*

## I.

Los hechos de este caso se remontan a una demanda incoada por los peticionarios el 13 de septiembre de 2013 tras una disputa sobre la conmutación del usufructo viudal de la Dra. Ana Hilda Mejía Soto (en adelante, ¨Dra. Mejía¨ o ¨recurrida¨).

Conforme surge del expediente, el causante, Sr. Carlos M. Quiñones Aulí falleció testado el 17 de julio de 2012.

Años previo a la muerte del causante, para el 30 de diciembre de 2005 y 25 de enero de 2006, este donó en partes iguales a sus dos hijos, Carlos Manuel y Carlos Rafael Quiñones González, su participación de las acciones que poseía en el Garaje Isla Verde.

Una vez iniciado el pleito, el albacea y los coherederos admitieron ante el TPI que las donaciones del 50% de las acciones comunes en circulación y preferidas que recibieron de su padre eran computables para el cálculo de la cuota viudal. A raíz de ello, se produjo la controversia medular del caso, la fecha en que se deben valorar las acciones donadas por el causante.

Luego de celebrado el juicio entre los años 2016 y 2017, el 15 de septiembre de 2017 el TPI dictó una *Sentencia.* En la misma el Tribunal resolvió, en lo pertinente, que: (1) el caudal relicto bruto es de $5,264,281.00; (2) le corresponde a la Dra. Mejías $1,130,002.19 en concepto de usufructo vitalicio, y; (3) los hermanos Quiñones tienen la obligación de pagarle a la Dra. Mejías $980,912.54 en concepto de usufructo viudal.

Inconforme con el dictamen emitido por el foro de instancia, las partes acudieron al Tribunal de Apelaciones mediante los recursos KLAN201701324, presentado por la Dra. Mejías, y KLAN201800187, presentado por los hermanos Quiñones

El 31 de enero de 2019, esta Curia dictó una *Sentencia* en el recurso KLAN201701324 en la que confirmó, modificó y revocó en parte la *Sentencia* del 9 de febrero del 2015 emitida por el TPI. El foro apelativo intermedio resolvió:

> **1) se *revoca* la computación del caudal hereditario por no incluir el valor de las acciones de GIV y CMQ para el cálculo la legítima**; 2) se *confirma* la determinación del TPI de no dar por admitida la alegación 31(a) enmendada del Informe Conjunto; 3) se *confirma* la determinación del TPI de no aplicar intereses por mora desde el fallecimiento del Causante; **4) se *modifica* el cómputo por concepto de los pronto pagos y nivelación**; 5) se *revoca* la determinación del TPI de reducir del caudal relicto bruto la mitad de los gastos del legado cubiertos por la apelante desde el fallecimiento del Causante; 6) se *confirma* la determinación del TPI a los efectos de que no procede una indemnización por daños; y 7) se *confirma* la determinación del TPI en cuanto a la inexistencia de temeridad y la improcedencia de imponer honorarios de abogado a favor de la apelante. (Énfasis suplido).

Sobre la cantidad a pagar por la Dra. Mejías por concepto de pronto pago, dispuso que ¨[l]a cantidad correcta por este concepto que le corresponde pagar a la apelante es 50% de $185,784.46, a saber, **$92,892.23**¨. (Énfasis suplido). De otra parte, sobre el pago correspondiente a los hermanos Quiñones por concepto de nivelación resolvió que ¨[...] luego de un análisis detenido de la sentencia apelada, hemos identificado solamente **$37,471.38** por ese concepto¨. (Énfasis suplido).

En cambio, respecto a la valoración del usufructo viudal expresó que:

> [...] [L]os pasos a seguir para determinar el valor presente de la cuota viudal usufructuaria son los siguientes:
> **1. Determinar el valor de la cuota usufructuaria al momento de la conversión o conmutación;**
> 2. Determinar la edad del cónyuge supérstite a la fecha de la muerte del causante;
> 3. Una vez se obtiene la edad del cónyuge supérstite, se procede a utilizar la Tabla de Expectativa de Vida Promedio en Puerto Rico. Localizar la edad del cónyuge supérstite,

según su sexo, en dicha tabla y ésta le indicará la expectativa de vida de dicho cónyuge supérstite.

4.  Una vez se obtiene la expectativa de vida del cónyuge supérstite, se busca el factor matemático para conmutar el valor actual de cada dólar pagadero al final de cada año al interés compuesto de un seis porciento (6%) anual en la Tabla para determinar la conmutación del usufructo.

5.  Multiplicar el valor de la cuota usufructuaria por el seis porciento (6%). El producto obtenido es la renta anual pagadera al final de cada año ('ordinary annuity').

6.  Multiplicar la renta anual por el factor matemático obtenido. El resultado es la cantidad que se debe entregar al cónyuge supérstite, tomando éste dicha cantidad como único titular. J. Muñiz Belbrú, Herencia, El Usufructo Viudal, Determinación y Liquidación, Puerto Rico, 1997, pág. 42; González Tejera, *op. cit.*, págs. 121-122. (Énfasis suplido).

Por otro lado, el 16 de mayo de 2019, un Panel Hermano de este Tribunal emitió una *Sentencia* en el caso KLAN201800187 y modificó la *Sentencia* del 15 de septiembre de 2017. Determinó que:

• Los herederos tienen derecho a recobrar el 50% por concepto de pronto pago efectuados por el Sr. Quiñones Aulí, eso es, $92,892.23, y la Sra. Ana Hilda Mejía Soto $5,000.00, por concepto del 50% del pronto pago efectuado por ésta.

• Procede que se reconozca el tercio de mejora instituido en el testamento otorgado por el Sr. Quiñones Aulí y que se compute el usufructo viudal de la Sra. Ana Hilda Mejía Soto, utilizando el tercio de mejora.

• La Sra. Ana Hilda Mejías Soto deberá asumir las cargas y gastos incurridos en los bienes legados desde el momento en que falleció el Sr. Quiñones Aulí.

Insatisfecha con la decisión del foro apelativo intermedio en el caso KLAN201800187, la Dra. Mejías presentó un recurso de *Certiorari* ante el Tribunal Supremo. Así las cosas, mediante *Sentencia* no publicada el 8 de marzo de 2022 nuestro más alto foro revocó parcialmente la *Sentencia* del 16 de mayo de 2019 dictada por el Tribunal de Apelaciones. En específico, la *Sentencia* del Tribunal Supremo revocó lo ordenado por esta Curia respecto al cómputo del usufructo viudal.

Además, nuestro más alto foro resolvió que el usufructo viudal debía ser calculado a base de la legítima larga. Así, confirmó la *Sentencia* emitida por el foro apelativo intermedio en sus demás partes y devolvió el caso al TPI para que determinara, de

conformidad con lo resuelto en su *Sentencia,* y como único asunto pendiente, la cuota de usufructo viudal que le corresponde a la Dra. Mejías.

A tenor con lo resuelto en los casos KLAN201701324, KLAN201800187 y CC2019-512, el 5 de julio de 2023 el TPI dictó una *Sentencia Enmendada,* notificada el 12 de julio de 2023. Según se desprende la *Sentencia Enmendada,* el Tribunal Supremo ¨[...] devolvió el caso [al TPI] para determinar la cuota de usufructo viudal que le corresponde a la doctora Mejía Soto¨.

A tales efectos, el TPI: (1) corrigió el cómputo de los créditos a favor de los hermanos Quiñones por concepto de pronto pago a $92,892.23 y $37,471.38 por concepto de nivelación, según ordenado en el caso KLAN201701324; (2) valoró las acciones donadas en $1,751,000.00 (3) calculó el pago de usufructo viudal en $1,339,839.52, conforme a lo ordenado por el Tribunal Supremo, y; (4) calculó el usufructo vitalicio en $1,543,482.71.

De la Sentencia Enmendada, los recurridos presentaron una *Moción Nunc Pro Tunc* el 17 de julio de 2023, haciendo alusión a una cuantía de créditos que no fueron considerados. Por su parte, la Dra. Mejías presentó una *Oposición a Moción Nunc Pro Tunc* junto con *Moción de Reconsideración* el 24 de julio de 2023. La Dra. Mejías adujo que la *Sentencia Enmendada* no incorporó el mandato del Tribunal de Apelaciones en la *Sentencia* del caso KLAN201701324 respecto a la valorización de las acciones donadas para efectos del cómputo y conmutación de la cuota viudal. Añadió, que la cuota viudal debía computarse utilizando el valor de las acciones al momento de la conmutación. Por lo tanto, solicitó que la *Sentencia Enmendada* fuera dejada sin efecto.

A tales efectos, el 3 de octubre de 2023 se celebró ante el TPI una vista argumentativa. Una vez considerados los argumentos de ambas partes, el 10 de octubre de 2023 el TPI dictó una *Resolución*

*y Orden* y archivó copia de su notificación el 11 de octubre de 2023. La Resolución dejó sin efecto la *Sentencia Enmendada* del 5 de julio de 2023. A su vez, dispuso:

> Se les ordena a los peritos de las partes a coordinar una reunión e informar el cómputo de la cuota de usufructo viudal que le corresponde a la doctora Mejías Soto en el término de 30 días, es decir hasta el 30 de noviembre de 2023. Dicho cómputo deberá ser calculado a base de las dos terceras partes (legítima larga) del caudal hereditario del señor Quiñones Aulí, por ser la porción que -como legítima- les corresponde a los hermanos Quiñones González. Véase Sentencia del Tribunal Supremo emitida el 8 de marzo de 2022.

No obstante, al dejar sin efecto la sentencia enmendada se eliminaron los créditos concedidos a favor de los hermanos Quiñones por concepto de nivelación y por concepto de pronto pago reconocidos y ordenados por el TA.

En desacuerdo, el 10 de noviembre de 2023 los peticionarios acudieron ante esta Curia imputándole al TPI haber errado al así actuar. Señalaron los siguientes errores:

> PRIMER ERROR: Erró el TPI al revocar arbitrariamente la Sentencia Enmendada eliminando los créditos a favor de los hermanos Quiñones por $37,471.38 (nivelación) y $92,892.00 (pronto pago) reconocidos y ordenados por el TA en los casos KLAN 2017-01324 y KLAN 2018-0177.

> SEGUNDO ERROR: Erró el TPI al revocar arbitrariamente la Sentencia Enmendada eliminando la valoración de la donación de acciones de GIV-CMQ sin considerar el Informe con Antelación al Juicio el cual gobierna el curso de litigio, en particular que las partes estipularon que la valoración de las acciones GIV-CMQ se realizaría al 2006.

> TERCER ERROR: Erró el TPI al revocar arbitrariamente la Sentencia Enmendada ordenando una nueva valoración por los peritos sin base jurídica para ello, asunto ya resuelto por el Juez Álvarez y que en esta etapa del proceso no es un asunto en controversia o no que planteado por la parte contraria en el pleito.

> CUARTO ERROR: Erró el TPI al revocar arbitrariamente la Sentencia Enmendada sin haber cumplido con lo que dispone la Regla 42 de Procedimiento Civil que le impone el deber de hacer determinaciones de hecho y conclusiones de derecho para sostener su decisión.

> QUINTO ERROR: Erró el TPI al revocar arbitrariamente la Sentencia Enmendada y dejar al arbitrio de los peritos el momento o la fecha en la cual realizar la valoración ya que esto es una cuestión de derecho que debe determinarla el Juez.

El 15 de noviembre de 2023 los hermanos Quiñones presentaron una *Moción Solicitando la Transcripción de la Prueba Oral de los Peritos y de la Solicitud del Honorable Juez Álvarez, de un Memorandum de Derecho al Concluir el Juicio*. Los hermanos Quiñones solicitaron la transcripción de la prueba oral pericial y la autorización para presentar un alegato suplementario. En oposición, la Dra. Mejía presentó una *Oposición a Moción Solicitando Transcripción* el 21 de noviembre de 2023.

Luego, el 28 de noviembre de 2023 los hermanos Quiñones presentaron una *Moción para la Expedición de Certiorari*. Solicitaron que se expidiera un recurso de *Certiorari*, en lugar del recurso de *Apelación* presentado el 10 de noviembre de 2023. La Dra. Mejía presentó su *Alegato en Oposición a Auto Certiorari* el 1 de diciembre de 2023 en el que adujo que al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, no procede la expedición de este *Certiorari*.

**II.**

**A. El *Certiorari***

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra; Scotiabank de Puerto Rico v. ZAF Corporation,* 202 DPR 478 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> [e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari,* la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari,* a saber:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para analizar el problema.
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140 (2000).

**B. Ley del Caso**

La doctrina de la "Ley del Caso" es una manifestación necesaria y conveniente del principio reconocido de que las adjudicaciones deben tener fin. *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136 (1967). Es reconocida generalmente la norma de que las determinaciones de un tribunal apelativo constituyen la "Ley del Caso" en todas aquellas cuestiones consideradas y decididas pues generalmente obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve a su consideración. *Id.*

Es doctrina reiterada en nuestro sistema que los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. *In re: Fernández Díaz*, 172 DPR 38 (2007); *Mgmt. Adm. Serv. Corp. v. E.L.A.*, 152 DPR 599 (2000); *In re:*

*Tormos Blandino*, 135 DPR 573 (1994), citando a *U.S.I. Properties Inc. v. Registrador*, 124 DPR 448 (1989). Dicho de otra manera, de ordinario los planteamientos que han sido objeto de adjudicación por el foro de instancia y/o por este Tribunal no pueden reexaminarse. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la "Ley del Caso". *Mgmt. Adm. Serv. Corp. v. E.L.A., supra; Vélez v. Serv. Legales de P.R., Inc.*, 144 DPR 673 (1998), citando a *Sánchez Rodríguez v. López Jiménez*, 118 DPR 701 (1987).

En *Srio. del Trabajo v. Tribunal Superior, supra*, el Tribunal Supremo describió la doctrina señalando:

> Es reconocida generalmente la norma de que las determinaciones de un tribunal apelativo constituyen la "ley del caso" en todas aquellas cuestiones consideradas y decididas y generalmente obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve a su consideración. Decimos generalmente, ya que se reconoce que "cuando un tribunal se convence de que la ley del caso establecida es errónea y que podría causar una grave injusticia, debe de tener el poder de aplicar una norma de derecho diferente con el propósito de resolver el caso que tiene ante su consideración en una forma justa". 1B Moore, Federal Practice, Secs. 404(1), 405 (2da. Ed. 1965). Véase, además, *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19 (1971).

Como regla general, los foros apelativos no debemos intervenir con el ejercicio de la discreción de los foros de instancia, a menos que quede demostrado que hubo un craso abuso de discreción; que el foro apelado erró en la interpretación o aplicación de cualquier norma procesal; o, que la intervención en esta etapa evitaría un perjuicio sustancial. *García v. Asociación*, 165 DPR 311 (2005); *Álvarez v. Rivera*, 165 DPR 1 (2005); *Meléndez v. Caribbean Int'l News*, 151 DPR 649 (2000); *Lluch v. España Service Sta.*, 117 DPR 729 (1986).

No obstante, el derecho común preceptúa que un segundo juez no está irremisiblemente obligado a mantener incólume la decisión de un primer juez de igual nivel dentro del mismo caso. *Torres Cruz v. Municipio de San Juan*, 103 DPR 217 (1975). El

Tribunal Supremo ha reconocido que "si el Tribunal entiende que la ley del caso antes establecida es errónea y que puede causar una grave injusticia, el Tribunal puede aplicar una norma de derecho diferente a fin de resolver en forma justa." *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19 (1971). Por otro lado, nuestro más alto foro ha reiterado que la doctrina de la ley del caso es una "[...] al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados manifiestamente injustos." *Noriega Rodríguez v. Hernández Colón*, 130 DPR 919 (1992), citando a *Estado v. Ocean Park Dev. Corp.*, 79 DPR 158 (1956) y otros.

## III.

Los recurrentes solicitan que revoquemos una *Resolución y Orden* del TPI en la que dejó sin efecto la Sentencia Enmendada del 5 de julio de 2023. En el caso de autos, lo resuelto por el Tribunal de Apelaciones y por el Tribunal Supremo en las sentencias emitidas como parte de los casos KLAN201701324, KLAN201800187 y CC2019-512, constituyen la ley del caso. Es norma reiterada que las determinaciones de un tribunal apelativo constituyen la ley del caso y obligan tanto al tribunal de instancia como al que las dictó.

Luego de lo resuelto por el Tribunal Supremo en el caso CC2019-512, solo quedaba por resolver el cómputo del usufructo viudal. Según lo dispuesto por nuestro más alto foro, el caso sería devuelto al TPI con el único propósito de que se determinara la cuota de usufructo viudal que le corresponde a la Dra. Mejías.

A tales efectos, el TPI emitió la *Sentencia Enmendada* del 5 de julio de 2023 donde consignó lo resuelto por el Tribunal Supremo y el Tribunal de Apelaciones. Específicamente, en lo pertinente, el TPI: (1) consignó los créditos de \$92,892.23 por concepto de pronto pago y \$37,471.38 por concepto de nivelación a favor de los hermanos

Quiñones; (2) valoró el usufructo viudal en $1,339,839.52, y; (3) valoró las acciones donadas en $1,751,000.00.

No obstante, mediante la *Resolución y Orden* del 10 de octubre de 2023 el TPI dejó sin efecto la *Sentencia Enmendada* debido a su omisión de incorporar lo ordenado por el TA en el recurso KLAN201701324 respecto al cómputo de la cuota viudal. Para cumplir con lo allí dispuesto, ordenó la reunión de los peritos para llevar a cabo la valoración de las acciones donadas a los hermanos Quiñones en los años 2005 y 2006 e incorporar su valor al cómputo de la cuota viudal.

El TPI, bajo su facultad discrecional, dejó sin efecto una determinación propia para incorporar en su totalidad la ley del caso establecida en los casos KLAN201701324, KLAN201800187 y CC2019-512. Por ende, tuvo la cautela de dejar sin efecto la *Sentencia Enmendada* hasta que culminara el proceso de valoración de las acciones y, finalmente, se pudiera resolver completamente la controversia. El referido acto no está fuera de los parámetros de discreción del foro de instancia.

Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

## IV.

Por los fundamentos antes expuestos, *denegamos* la expedición del recurso de *certiorari* ante nuestra consideración.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones