Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| MUNICIPIO DE MAUNABO<br><br>RECURRIDO<br><br>v.<br><br>COBRA ACQUISITIONS, LLC<br><br>PETICIONARIOS | KLCE202401308 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm. MB2018CV00043<br><br>Sobre: Pago de Arbitrios de Construcción y Patentes Municipales |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de enero de 2025.

### I.

El 3 de diciembre de 2024, Cobra Acquisitions, LLC (Cobra o parte peticionaria) presentó una *Petición de Certiorari* en la que solicitó que revoquemos una *Resolución* emitida, notificada y archivada digitalmente por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro primario) el 27 de noviembre de 2024.[2] En el dictamen, el TPI declaró No Ha Lugar una *Solicitud de sentencia sumaria* radicada por la parte peticionaria en el pleito sobre pago de arbitrios de construcción y patente municipal que promueve en su contra el Municipio Autónomo de Maunabo (Municipio de Maunabo o parte recurrida), a tenor con determinaciones previas de este foro apelativo.

---

[1] Véase Orden Administrativa OATA 2021-086.
[2] Apéndice de la *Petición de Certiorari*, Anejo F, págs. 90-98.

Junto al recurso, Cobra radicó una *Urgente solicitud en auxilio de jurisdicción* en la que solicitó que ordenáramos la paralización de los procedimientos ante el foro primario.

Ese mismo día, emitimos una *Resolución* en la que declaramos No Ha Lugar la solicitud de orden en auxilio de jurisdicción y le concedimos al Municipio de Maunabo hasta el 23 de diciembre de 2024 para presentar su alegato sobre los méritos del recurso.

El 26 de diciembre de 2024, el Municipio de Maunabo radicó un *Alegato del Municipio de Maunabo* en el que solicitó que declaremos No Ha Lugar la *Petición de Certiorari* y le impongamos sanciones económicas a la parte peticionaria por interponer el recurso de forma temeraria y frívola.

Contando con el beneficio de la comparecencia de ambas partes, damos por perfeccionada la *Petición de* Certiorari. Debido a que los hechos procesales de este caso están estrechamente relacionados a las incidencias del KLAN202000146, resuelto por esta Curia mediante *Sentencia* el 28 de abril de 2020, y el KLAN202300022, atendido por esta Curia mediante *Sentencia* el 17 de marzo de 2023, adoptamos por referencia el trámite procesal relatado en esas ocasiones y, en adelante, pormenorizamos aquellos sucesos más relevantes e inmediatos a la controversia que nos ocupa.

**II.**

El caso de marras tiene su génesis el 14 de noviembre de 2018 cuando el Municipio presentó una *Demanda* contra Cobra y la Autoridad de Energía Eléctrica (AEE) sobre el pago de arbitrios de construcción y patente municipal.[3]

Luego de un abundante trámite procesal, el 14 de noviembre de 2022, el TPI emitió una *Sentencia* en la que declaró Con Lugar

---

[3] Entrada Núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

una moción en solicitud de sentencia sumaria promovida por el Municipio de Maunabo y ordenó a Cobra pagar $8,489,651.36 por concepto de arbitrios de construcción y $530,603.21 por concepto de patentes municipales.[4] En ella, el foro primario concluyó que no podía decidir a favor de la parte peticionaria porque los planteamientos esbozados fueron resueltos por esta Curia en el KLAN202000146.

En la misma, el TPI formuló los siguientes hechos incontrovertidos:

1. Puerto Rico fue impactado por el Huracán Irma y María para el mes de septiembre de 2017.

2. El 4 de septiembre de 2017, el Gobernador de Puerto Rico promulgó la Orden Ejecutiva Núm. 2017-045 y, el 17 de septiembre de 2017, la Orden Ejecutiva Núm. 2017-047, declarando un estado de emergencia en todo Puerto Rico ante el inminente paso de los Huracanes Irma y María por nuestra zona.

3. El 5 de septiembre de 2017, todo Puerto Rico fue azotado por el Huracán Irma.

4. El 20 de septiembre de 2017, todo Puerto Rico fue azotado por el Huracán María.

5. El Municipio de Maunabo, fue afectado en los principales servicios públicos como lo fueron las comunicaciones, el servicio de agua potable y de energía eléctrica.

6. Entre las empresas contratadas por la Autoridad de Energía Eléctrica (A.E.E.) para restaurar el servicio de energía eléctrica en Puerto Rico, estuvo Cobra Acquisitions, L.L.C.

7. La A.E.E. suscribió los contratos números 79503 y 81388 con Cobra Acquisitions, L.L.C., para cumplir con la encomienda de restablecer el servicio eléctrico en Puerto Rico y dentro de los límites geográficos del Municipio de Maunabo.

8. Para cumplir su obligación de rehabilitar la infraestructura del sistema eléctrico de Puerto Rico, Cobra Acquisitions L.L.C., mantuvo presencia física en los límites territoriales del Municipio de Maunabo estableciendo centros de operaciones en las comunidades de: Barrio Quebradas Arenas, Barrio Talante y Barrio Matuyas del Municipio de Maunabo, donde tenían estaciones en las que almacenaban materiales y llevaban a cabo labores de ensamblaje para luego ser transportados a lugares remotos en helicóptero.

9. Para los años 2017, 2018 y 2019, el Municipio de Maunabo tenía vigente el inciso "A" de la Sección 3, de la Ordenanza Número 13, Serie 2006-2007, sobre la contribución por concepto de Arbitrios de Construcción que impone una tasa contributiva del ocho por ciento (8%) sobre

---

[4] Apéndice de la *Petición de Certiorari*, Anejo C, págs. 19-32.

el total de la obra que sobrepasa los diez millones de dólares ($10,000,000.00).

10. Para los años 2017, 2018 y 2019 el Municipio de Maunabo tenía vigente el inciso "c" de la Sección 4, de la Ordenanza Número 1, Serie 2005-2006, sobre la contribución por concepto de Patentes, que impone una tasa contributiva del .50% sobre el total de una obra que sobrepasa los quinientos mil dólares ($500,000.00).

11. Cobra Acquisitions, LLC., nunca radicó ante la Oficina de Finanzas del Municipio de Maunabo una Declaración de Actividad detallada por renglón que describiera los costos de la obra a realizarse en esa jurisdicción como parte de los trabajos de reconstrucción contratados por la A.E.E.

12. Cobra Acquisitions, LLC., no rindió la planilla de volumen de negocio ante al Municipio de Maunabo relacionado a los servicios contratados con la A.E.E. bajo los contratos números 79503 y 81388, conforme a la Ley de Patentes Municipales, Ley Núm. 113 de 10 de Julio de 1974 (hoy derogada).

13. El Municipio de Maunabo demandó en cobro de contribuciones por concepto de Arbitrios de Construcción y Patentes Municipales a Cobra Acquisitions, L.L.C. el 14 de noviembre de 2018.

14. El 20 de febrero de 2019 Cobra presentó la primera Moción de Desestimación. Dicha moción de desestimación estaba fundamentada en los siguientes argumentos:

a) Que a Cobra le era extensiva la exención d[i]spuesta en inciso (f) (6) del Artículo 2.007 de la Ley 81-1991, según enmendada, conocida como Ley de Municipios Autónomos (derogada) y la decisión del Tribunal Supremo en Cooperativa de Ahorro y Crédito v. Municipio de Mayagüez 2018 T.S.P.R. 109.

b) Que la AEE se encontraba cobijada por la "Ley PROMESA" desde antes del paso de los huracanes Irma y María y, de la firma del contrato con Cobra, por lo que no podía ser demandada y era parte indispensable.

c) Que la Agencia Federal para el Manejo de Emergencias (FEMA, por sus siglas en inglés), no se había expresado si consideraba "apropiado que la AEE utilizara los fondos de recuperación para el pago de patentes o arbitrios a los municipios". Siendo así, cuando Cobra le fuera a recobrar los arbitrios, la AEE tendría que pagarlo de sus propios fondos y, como estaba en acogida a la paralización no los podían pagar.

15. La moción de desestimación de Cobra, fue declarada con lugar por el Tribunal de Primera Instancia al 9 de julio de 2019.

16. El 18 de febrero de 2020 el Municipio de Maunabo presentó un Recurso de Apelación ante el Tribunal de Apelaciones en Municipio de Maunabo vs. Cobra Acquisitions, LLC., KLAN20200[0]146.

17. El 28 de abril de 2020 el Tribunal de Apelaciones dictó Sentencia en el caso Municipio de Maunabo vs. Cobra Acquisitions, L.L.C;, KLAN20200[0]146. En la misma, se revocó la Sentencia del 9 de julio de 2019 del TPI y adjudicó

que a Cobra Acquisitions, L.L.C., no le aplican las exenciones de la Autoridad de Energía Eléctrica. Véase: Mun. De Maunabo vs. Cobra Acquisitions, LLC, KLAN202000146, a la página 16.

18. El 3 de junio de 2021, COBRA duplicó los planteamientos de su primera Moción de Desestimación que motivó la Sentencia del caso Mun. De Maunabo vs. Cobra Acquisitions, LLC, KLAN202000146.

19. El 11 de agosto de 2021, la Honorable Itzel Aguilar Pérez declaró No ha lugar, la segunda moción de desestimación, sobre todo los argumentos de exención de los arbitrios de construcción.

20. El volumen de negocios total de Cobra Acquisitions L.L.C., por los trabajos con presencia física en el territorio de Maunabo ascendió a ciento seis millones, ciento veinte mil seiscientos cuarenta y dos dólares con sesenta y seis centavos ($106,120,642.66.)

21. La aplicación de la tasa contributiva del ocho por ciento (8%) dispuesto en el inciso "A" de la Sección 3, de la Ordenanza Número 13, Serie 2006-2007 al volumen de negocios total de Cobra Acquisitions L.L.C., en el territorio de Maunabo, resulta en una contribución por arbitrios de construcción debida de ocho millones cuatrocientos ochenta y nueve mil seiscientos treinta y un dólares con treinta y seis centavos ($8,489,651.36).

22. La aplicación de la tasa contributiva del .50% dispuesto en el inciso "c" de la Sección 4, de la Ordenanza Número 1, Serie 2005-2006, al volumen de negocios total de Cobra Acquisitions L.L.C., en el territorio de Maunabo, resulta en una contribución por patentes municipales debida de quinientos treinta mil seiscientos tres dólares con veintiún centavos ($530,603.21).[5]

En desacuerdo con el dictamen, Cobra acudió ante esta Curia mediante *Apelación*, recurso que recibió el identificador alfanumérico KLAN202300022, en la que le imputó al TPI que erró al fundamentar la *Sentencia* en expresiones del Tribunal de Apelaciones que constituían *obiter dictum*, al imponerle el pago de arbitrios de construcción cuando a Cobra le debía aplicar la exención contributiva extendida a la AEE y cuando tampoco poseía presencia física dentro de la demarcación territorial del Municipio de Maunabo.

El 17 de marzo de 2023, emitimos una *Sentencia* en dicho caso por la que revocamos el dictamen emitido por el TPI, resolvimos que existían tanto hechos incontrovertidos como en controversia y

---

[5] Íd., págs. 26-30. (Notas al calce omitidas).

devolvimos el caso para que se dilucidaran estos mediante una vista evidenciaria. Por un lado, acogimos como probados los hechos uno (1) al siete (7) y nueve (9) al doce (12), según enumerados por el foro primario en su dictamen. Por el otro, concluimos que el hecho número ocho (8), relacionado a la alegada presencia física de Cobra en el Municipio de Maunabo, estaba en controversia. Asimismo, delineamos que existía controversia en cuanto a: (1) si Cobra tenía una oficina o lugar de negocio dedicado, con fines de lucro, a la prestación de servicios en el Municipio; (2) si las estaciones de almacén y labores de ensamblaje realizados por Cobra en el Municipio conllevan una remuneración económica; (3) si las labores realizadas por Cobra en el Municipio eran esenciales para el funcionamiento de la corporación y los servicios a ser prestados; (4) si las estaciones de almacén y labores de ensamblaje realizados por Cobra en el Municipio se consideran una actividad incidental a su negocio que no genera ingreso; (5) la cuantía final correspondiente a los arbitrios de construcción; y (6) de determinar que procede imponer el pago de patentes municipales, la suma adeudada por tal concepto. Sobre los hechos en controversia, resolvimos:

> Estos hechos materiales aún permanecen en controversia e inciden directamente en la cuantía de arbitrios de construcción y, además, en la imposición del pago de patentes municipales a Cobra, en el supuesto que se demuestre que este último tenía una oficina o lugar de negocios dentro de la demarcación territorial del Municipio.[6]

Devuelto el caso y luego de múltiples trámites procesales, el 9 de septiembre de 2024, Cobra radicó una *Solicitud de sentencia sumaria* en la que solicitó al TPI que desestimara la reclamación.[7] Según adujo, no procedía la imposición de arbitrios de construcción porque los trabajos realizados por la parte peticionaria estaban comprendidos dentro de la exención contributiva que cobija a la AEE como dueña del proyecto. De igual manera, arguyó que tampoco

---

[6] *Municipio de Maunabo v. Cobra Acquisitions,* KLAN202300022, pág. 14.
[7] Apéndice de la *Petición de Certiorari,* Anejo D, págs. 33-56.

correspondía la imposición del pago de patente municipal porque los trabajos realizados por COBRA dentro de la demarcación territorial del Municipio de Maunabo fueron incidentales y, a su vez, tampoco se alegó que tuviese allí una oficina o un lugar de negocios. Para sostener dichas conclusiones, propuso como incontrovertidos los siguientes hechos:

1. El 19 de octubre de 2017, la AEE contrató a COBRA para rehabilitar la infraestructura del sistema eléctrico de Puerto Rico, tras el paso devastador de los huracanes Irma y María.

2. COBRA estuvo realizando los servicios de restablecimiento y recuperación del sistema eléctrico de Puerto Rico tras el paso de los Huracanes en el 2017 hasta el 25 de mayo 2019.

3. Como parte de los esfuerzos de recuperación y restablecimiento del sistema eléctrico de Puerto Rico, la AEE le solicitó a COBRA que trabajara en el área del Municipio.

4. COBRA no estableció una oficina ni lugar de negocios en el Municipio, limitándose a proveer servicios incidentales a la rehabilitación de la infraestructura energética en todo Puerto Rico.

5. El 14 de marzo de 2018, el Municipio envió una Factura requiriendo el pago de arbitrios de construcción y patentes municipales a COBRA por la cantidad de $399,272.01.

6. El 27 de agosto de 2018, COBRA informó al Municipio que había cumplido con el memorando de la OCRR del 15 de agosto de 2018, que requería a los contratistas involucrados en las gestiones de recuperación de la red eléctrica que enviaran todas las notificaciones y requerimientos recibidos de los municipios directamente a sus oficinas.

7. El 9 de noviembre de 2018, el Municipio solicitó cierta información para el cobro de patentes y arbitrios de construcción.

8. Sin conceder una vista administrativa, ni haber emitido una Notificación Final indicando la base utilizada o evidencia revisada para determinar la imposición e imputación del volumen de negocio y del arbitrio de construcción al trabajo realizado por COBRA a favor de la AEE, el 14 de noviembre de 2018, el Municipio radicó la presente acción; demanda que fue enmendada el 17 de agosto de 2021, aumentando la cantidad reclamada.[8]

El 30 de septiembre de 2024, el Municipio de Maunabo presentó una *Moción en oposición a segunda solicitud de sentencia sumaria* en la que solicitó que se declarara No Ha Lugar la solicitud

---

[8] Íd., págs. 34-35. (Se omitieron los ennegrecidos del original y las referencias a los anejos de la moción original y a entradas en el expediente digital del caso en el SUMAC).

de sentencia sumaria promovida por Cobra.[9] En ella, discutió que la moción presentada por la parte peticionaria no cumplía con los requisitos de la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Igualmente, esbozó que tampoco procedía porque el TPI no tenía jurisdicción para reexaminar lo que decidió el Tribunal de Apelaciones en su *Sentencia* en el KLAN202300022, la cual advino final, firme e irrevisable. A su entender, esta Curia había resuelto que Cobra tenía la obligación de pagar arbitrios de construcción porque la exención de la AEE no se extendía a dicha compañía y, por lo tanto, solo correspondía determinar la cuantía que debía pagar por ese concepto. Según planteó, esa era la ley del caso. Por último, también adujo que la *Solicitud de sentencia sumaria* era una copia exacta de la moción adjudicada en la *Sentencia* del TPI, emitida el 14 de noviembre de 2022, revocada en el KLAN202300022 y, por ello, se debía concluir que su presentación fue frívola y temeraria.

El 1 de octubre de 2024, Cobra radicó una *Réplica a oposición a solicitud de sentencia sumaria* en la que reiteró su petición de desestimación, dirigiéndose directamente a varios de los argumentos interpuestos por la parte recurrida en su oposición.[10]

El 27 de noviembre de 2024, el TPI emitió, notificó y archivó digitalmente la *Resolución* recurrida en la que declaró No Ha Lugar la *Solicitud de sentencia sumaria* promovida por la parte peticionaria.[11] En lo pertinente, resolvió que procedía celebrar una vista evidenciaria para dilucidar las controversias respecto a la patente municipal y a la cuantía final correspondiente a los arbitrios de construcción, según ordenó este foro. A su juicio, correspondía aplicar las doctrinas del mandato judicial y la ley del caso respecto

---

[9] Íd., Anejo E, págs. 57-89.
[10] Entrada Núm. 204 del expediente digital del caso en el SUMAC.
[11] Apéndice de la *Petición de Certiorari*, Anejo F, págs. 90-98.

a lo decidido por el Tribunal de Apelaciones en su *Sentencia* en el KLAN202300022, teniendo el foro primario jurisdicción únicamente para ejecutar lo determinado y respetar el proceder delineado en ella. Según interpretó, el dictamen nuestro fue claro al establecer que: (1) debía dilucidarse mediante vista evidenciaria si Cobra estableció centros de operaciones en el Municipio de Maunabo para efectos de la patente municipal; (2) debía dilucidarse también la cuantía a imponerse por concepto de arbitrios de construcción; y (3) no estaban en controversia los hechos número uno (1) al siete (7) y nueve (9) al doce (12). Además, subrayó que esta Curia ha adjudicado reiteradamente – en el KLAN202300022 y el KLCE202400064 – que la parte peticionaria no está exenta del pago de dicha imposición porque no está cobijada por la exención extendida por ley a la AEE.

Inconforme, el 3 de diciembre de 2024, Cobra presentó la *Petición de Certiorari* de epígrafe y le imputó al TPI la comisión de los siguientes errores:

> PRIMER SEÑALAMIENTO DE ERROR: Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al descartar la Sentencia revocatoria de este Tribunal de Apelaciones y, en su lugar, emplear las doctrinas de ley del caso y mandato judicial.

> SEGUNDO SEÑALAMIENTO DE ERROR: Cometió grave error y abusó de su discreción el Tribunal de Primera Instancia al denegar la Solicitud de Sentencia Sumaria de COBRA sin hacer determinaciones de hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y sobre los que sí están realmente y de buena fe controvertidos, conforme le comanda la Regla 36.4 de Procedimiento Civil.

Para la parte peticionaria, la doctrina de la ley del caso no es aplicable porque, como el Tribunal de Apelaciones revocó al foro primario en el KLAN202300022, cualquier expresión de esta Curia sobre arbitrios de construcción no tuvo efecto adjudicativo y, por lo tanto, no existía una determinación final que atendiera la controversia. En contraste, señaló que dos (2) paneles distintos del Tribunal de Apelaciones – en *Lord Construction Group, Inc. v.*

*Municipio Autónomo de San Juan,* KLAN202300577 y en *Municipio de Guánica y otros v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico,* KLAN202400062 – resolvieron que la exención de la AEE se extiende a sus contratistas porque, de lo contrario, se frustraría la intención legislativa que motivó la exención contributiva. Según aduce, como nuestro Tribunal Supremo rechazó revisarlos, estos dictámenes son las determinaciones del Tribunal de Apelaciones con mayor jerarquía y, conforme a ellas, se debe considerar a Cobra exenta del pago de arbitrios de construcción. Por último, postuló que el TPI incumplió la Regla 36.4 de Procedimiento Civil, *supra,* porque no formuló los hechos que entendió probados, ni aquellos que consideró controvertidos.

En apoyo de la *Resolución* recurrida, el 26 de diciembre de 2024, el Municipio de Maunabo radicó un *Alegato del Municipio de Maunabo* en el que argumentó en contra de la expedición del auto de *Certiorari* y solicitó que le impongamos sanciones a Cobra por interponer el recurso. A su favor, arguye que es aplicable la doctrina de la ley del caso porque los señalamientos de error de Cobra ya fueron atendidos por el Tribunal de Apelaciones en el KLAN202300022 y el KLAN202000146, en donde se resolvió que Cobra no está exenta del pago de arbitrios de construcción y solo puede descartarse su aplicación cuando se atenta contra los principios básicos de la justicia, lo cual no ocurre en esta ocasión. Asimismo, esboza que, en virtud del KLAN202300022, existían determinaciones de hecho y conclusiones de derecho, según las delineó el TPI y las acogió esta Curia, cumpliéndose así con los requisitos de la Regla 36.4 de Procedimiento Civil, *supra.*

Más aún, reclama que la presentación de la *Petición de Certiorari* es frívola y temeraria y, por ello, debe acarrear la imposición de sanciones. Sobre esto aduce que esta es la tercera

ocasión en la que Cobra acude al Tribunal de Apelaciones con los mismos planteamientos – especialmente en lo referente a la alegada exención – luego de que fueran resueltos de forma final y firme, haciéndolo con la intención de dilatar, retrasar, demorar, obstaculizar y prolongar el litigio, obligando a la parte recurrida a incurrir en gestiones evitables.

Pormenorizado el trámite procesal pertinente a la controversia presentada por la *Petición de Certiorari* de epígrafe, en adelante, consignamos el derecho aplicable.

### III.

### A.

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra,* R. 52.1,[12] establece las instancias en las que le foro revisor posee autoridad

---

[12] Esta Regla dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.***, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorar*i que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Contruction, Inc.***, 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[13]

**B.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. Su propósito es facilitar la solución justa, rápida y económica de litigios civiles en

---

[13] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. Así, se promueve tanto la descongestión de calendarios, como la pronta adjudicación de controversias cuando una audiencia formal provocaría una dilación innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho

material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas*, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión*, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a *Ramos Pérez v. Univisión*, supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón,* supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos

materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata- Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra*, en lo pertinente a este mecanismo procesal.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de Derecho. ***Oriental Bank v. Perapi***, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse

el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra,* y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd. De esta manera, se mantienen las razones de política

pública que motivan esta Regla, toda vez que, considerando que la presentación de la moción de sentencia sumaria tiene el efecto de establecer los hechos en controversia e incontrovertidos independientemente de su resultado, las partes no volverían al día uno del litigio, con todos los asuntos en controversia, pese a invertir tiempo y recursos discutiendo la solicitud de sentencia sumaria. Íd., pág. 119. Asimismo, exigir el cumplimiento de esta Regla facilita la responsabilidad apelativa del Tribunal Supremo porque permite revisar los fundamentos que motivaron al Tribunal de Apelaciones a revocar una sentencia sumaria. Íd., págs. 119-120.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. Íd., pág. 119.

**C.**

El mandato es una figura propiamente vinculada a los procesos apelativos judiciales. ***Colón y otros v. Frito Lays***, 186 DPR 135, 151 (2012). Esta se define como el medio oficial que tienen los tribunales apelativos para comunicarle a un tribunal inferior qué determinación han tomado sobre la sentencia objeto de revisión y para ordenarle el cumplimiento con ella. ***Rosso Descartes v. BGF,*** 187 DPR 184, 191-192 (2012); ***Colón y otros v. Frito Lays,*** supra; ***Mejías et al. v. Carrasquillo et al.,*** 185 DPR 288, 301 (2012). Su propósito principal es lograr que los tribunales inferiores actúen en forma consistente con los pronunciamientos del foro apelativo. ***Mejías et al. v. Carrasquillo et al.,*** supra, citando a ***Pueblo v. Tribunal de Distrito,*** 97 DPR 241, 247 (1969). Así, recibido el mandato, lo resuelto por el tribunal apelativo constituye la ley del caso y el tribunal inferior debe limitarse a cumplir con lo ordenado. ***Rosso Descartes v. BGF,*** supra, pág. 192; ***Mejías et al. v.***

***Carrasquillo et al.,*** supra. Es decir, devuelto el caso, el foro primario debe circunscribirse a lo dispuesto por el foro apelativo. Íd.

**D.**

Como sugiere lo anterior, la doctrina de la ley del caso se encuentra estrechamente relacionada con la figura del mandato. Esta doctrina es una manifestación del principio de que las adjudicaciones deben tener fin. ***Rosso Descartes v. BGF,*** supra. Su propósito es velar por el trámite ordenado y pronto de los litigios, así como promover la estabilidad y certeza del derecho. Íd., pág. 193. De esta forma, las partes pueden conducirse en el pleito sobre directrices judiciales confiables y certeras. ***Núñez Borges v. Pauneto Rivera,*** 130 DPR 749, 754 (1992).

En virtud de esta doctrina, es la norma que los planteamientos que han sido adjudicados en el ámbito judicial, a través de un dictamen firme, constituyen la ley del caso y, por eso, sus determinaciones y asuntos decididos obligan tanto al tribunal inferior, como al que las dictó, impidiendo que puedan ser reexaminados. ***Rosso Descartes v. BGF,*** supra; ***Mgmt. Adm. Servs. Corp. v. E.L.A.,*** 152 DPR 599, 606-607 (2000).

Ahora bien, la doctrina de la ley del caso no representa un mandato invariable o inflexible, recoge una costumbre: que se respeten como finales las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa. ***Núñez Borges v. Pauneto Rivera,*** 130 DPR 749, 754 (1992). De la mano con esto, esta doctrina representa una sana práctica judicial, no una regla inviolable. ***Torres Cruz v. Municipio de San Juan***, 103 DPR 217, 222 (1975); ***Don Quixote Hotel v. Tribunal Superior***, 100 DPR 19, 30 (1971). Así, si un tribunal entiende que la ley del caso antes establecida es errónea y puede causar una grave injusticia, puede aplicar una norma de derecho distinta, en aras de resolver justamente. ***Don Quixote Hotel v. Tribunal Superior***, supra.

Empero, una determinación emitida por un tribunal apelativo previamente no debe alterarse, **a menos que** surja del expediente una variación de hechos del caso o un estado de derecho particular. ***Rosso Descartes v. BGF,*** supra, pág. 192-193; ***Mgmt. Adm. Servs. Corp. v. E.L.A.,*** supra, pág. 607. Cónsono con esto último, la doctrina de la ley del caso no es férrea, ni de aplicación absoluta, si conduce a resultados manifiestamente injustos. ***Mgmt. Adm. Servs. Corp. v. E.L.A.,*** supra, pág. 608, (citando a ***Noriega v. Gobernador***, 130 DPR 919, 931 (1992).

**E.**

En la etapa apelativa, la Regla 85 del Reglamento del Tribunal de Apelaciones, *supra*, R. 85, rige la imposición de costas y sanciones a las partes en pleitos ante su consideración. En concreto, la referida regla dispone lo siguiente:

> (A) Las costas se concederán a favor de la parte que prevalezca, excepto en aquellos casos en que se disponga lo contrario por ley.
>
> (B) Si el Tribunal de Apelaciones determina que el recurso ante su consideración es frívolo o que se presentó para dilatar los procedimientos, lo denegará o desestimará, según sea el caso, e impondrá a la parte promovente o a su abogado o abogadas las costas, los gastos, los honorarios de abogado y la sanción económica que estime apropiada, la cual deberá reflejar, en lo posible, el costo de la dilación para el Estado y para la parte opositora recurrida causado por la interposición del recurso, conforme a las guías que establezca el Tribunal de Apelaciones.
>
> El tribunal impondrá iguales medidas a la parte promovida o a su abogado cuando determine que la contestación al recurso es frívola o que ha sido presentada para dilatar los procedimientos.
>
> (C) El Tribunal de Apelaciones impondrá costas y sanciones económicas en todo caso y en cualquier etapa a una parte, a su abogado o a su abogada por la interposición de recursos frívolos o por conducta constitutiva de demora, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia.
>
> (D) A discreción del Tribunal de Apelaciones, la sanción económica podrá ser a favor del Estado, de cualquier parte o de su abogado o abogada.
>
> (E) Los dictámenes del Tribunal de Apelaciones bajo esta regla, deberán ser debidamente fundamentados.

Dentro del marco de interpretación de la frivolidad y la temeridad, nuestro más alto foro ha expresado que la temeridad no procede: (1) en los litigios que envuelven planteamientos complejos y novedosos no resueltos en la jurisdicción; (2) cuando la parte responde a una apreciación errónea del derecho sin que existan precedentes vinculantes; o (3) cuando existe una desavenencia honesta en cuanto a cuál de las partes es beneficiada por el derecho aplicable. ***Maderas Tratadas v. Sun Alliance et. al.,*** 185 DPR 880, 926 (2012).

## IV.

En el presente recurso se impugna una *Resolución* en la que el TPI rechazó desestimar una reclamación sobre el pago de arbitrios de construcción y de patente municipal al declarar No Ha Lugar una *Solicitud de sentencia sumaria*, presentada, por segunda vez, por Cobra. A juicio del foro primario, en virtud de la doctrina del mandato judicial y la ley del caso, únicamente poseía jurisdicción para dar cumplimiento a una *Sentencia* previa de esta Curia, emitida en el KLAN202300022, en la que, expresamente, devolvimos el caso para la celebración de una vista evidenciaria con el fin de dilucidar varias controversias de hechos materiales relacionadas a los elementos requeridos para imponer la patente municipal y a la cuantía correspondiente a los arbitrios de construcción que fueron pormenorizados claramente en nuestra *Sentencia*. Cabe destacar que, en esa ocasión, también resolvimos que existían once (11) hechos incontrovertidos. Por último, el foro primario también concluyó que, en virtud de la doctrina de la ley del caso, estaba resuelto que Cobra no está exenta de pagar arbitrios de construcción

En desacuerdo con tal determinación, Cobra plantea que el TPI erró al aplicar las doctrinas de ley del caso y mandato judicial porque, conforme a nuestra *Sentencia* en el KLAN202300022, no existía determinación final respecto a la exención del pago de

arbitrios de construcción, la cual debería cobijar a la parte peticionaria. Además, hace referencia a los dictámenes de dos (2) paneles distintos del Tribunal de Apelaciones en los que se resolvió que la exención de la AEE en cuanto a dichos arbitrios se extiende a sus contratistas, en aras de no frustrar la intención legislativa que la creó. Según arguye, esas determinaciones son las decisiones vigentes de mayor jerarquía sobre el asunto, a pesar de que son otras partes y envuelven otros asuntos colaterales. Por último, también argumenta que el foro primario no cumplió con la Regla 36.4 de Procedimiento Civil, *supra*, al rechazar su segunda y prácticamente idéntica *Solicitud de sentencia sumaria* sin formular los hechos que entendió incontrovertidos, ni aquellos que estimó controvertidos.

En contraste, el Municipio de Maunabo contrapone que se debe aplicar la doctrina de la ley del caso porque los señalamientos de error esbozados por Cobra sobre los arbitrios de construcción fueron atendidos por esta Curia en el KLAN202300022 y el KLAN202000146, los cuales resolvieron que Cobra no estaba exenta del pago de los mismos. A su entender, no existen razones para descartar la aplicación de dicha doctrina. Además, subraya que nuestra *Sentencia* en el KLAN202300022 determinó hechos tanto en controversia, como incontrovertidos, y mandató que se realizara una vista evidenciaria para atender las controversias pendientes, según se delinearon en el dictamen. Por esa razón, coincide con la conclusión del TPI en cuanto a que el foro primario únicamente posee jurisdicción para dar cumplimiento a dicha orden.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que procede expedir el auto de *Certiorari*, confirmar la

*Resolución* recurrida y devolver el caso al foro primario para la continuación de los procedimientos. Según resolvimos previamente, procede la realización de una vista evidenciaria en cumplimiento con nuestra *Sentencia* en el KLAN202300022 y la dilucidación de las controversias allí delineadas. Un examen sosegado del expediente, la *Resolución* recurrida y los argumentos esbozados por ambas partes arroja que el asunto planteado amerita el ejercicio de nuestra facultad discrecional al expedir el auto de *certiorari*. El reiterado surgimiento de la alegada exención que debe extenderse a Cobra sobre el pago de arbitrios de construcción hace necesaria nuestra intervención. De ese mismo análisis se desprende la conclusión de que el TPI no incidió en los errores señalados y, por consiguiente, resulta imperativo confirmar el dictamen recurrido. Debido a nuestra *Sentencia* en el KLAN202300022, la cual advino final y firme luego de que el Tribunal Supremo rechazara revisarla[14], el foro primario <u>no</u> tenía discreción para resolver la presente controversia sin realizar una vista evidenciaria y sin específicamente resolver los hechos en controversia que allí pormenorizamos:

Como manifestamos en ese entonces, esos hechos materiales permanecen en controversia, impactan directamente la cuantía a imponerse por concepto de arbitrios de construcción y están relacionados con la posible imposición del pago de patente municipal a Cobra. Nuestro mandato fue claro: "[p]or los fundamentos pormenorizados, devolvemos este caso al TPI para la continuación de los procedimientos y para que se puedan dilucidar, a través de una vista evidenciaria, los hechos materiales en controversia antes formulados".[15] De ahí también que, al declarar No Ha Lugar la *Solicitud de sentencia sumaria* promovida una segunda vez por Cobra, el TPI no repitiera nuevamente los hechos

---

[14] Véase AC-2023-2025.

[15] *Municipio de Maunabo v. Cobra Acquisitions, LLC,* KLAN202300022, pág. 15.

en controversia y los incontrovertidos. Ya estaban delimitados por nuestra *Sentencia*. Incluso, ante una moción de sentencia sumaria idéntica en sus fundamentos a la presentada en el pasado, correspondía que se declarara Sin Lugar.

Así las cosas, **al TPI le corresponde ejecutar el mandato judicial de la *Sentencia* dictada en el KLAN202300022**, tal y como resolvió en la *Resolución* recurrida, debido a que es la ley del caso.

Similarmente, el dictamen nuestro en dicho caso es la ley del caso y establece que la conclusión de derecho de que la exención del pago de arbitrios de construcción que cobija a la AEE no se extiende a Cobra. Esa controversia fue objeto de atención en ese recurso, pues fue traída precisamente por la parte peticionaria. Concretamente, en el KLAN202300022, tanto la *Solicitud de sentencia sumaria* que motivó la *Sentencia* del TPI que luego se revocó, como la *Apelación* presentada ante esta Curia, planteaban el reiterado argumento de Cobra sobre la alegada exención del pago de arbitrios de construcción. Al igual que el TPI, el cual concluyó que la *Sentencia* en el KLAN202000146 atendió esa controversia, esta Curia resolvió: "[...] la AEE está exenta del pago de arbitrios de construcción por disposición de ley, no obstante Cobra no lo está".[16] También, resolvimos de manera diáfana:

> Evaluados los recursos ante nos, avalamos la postura del Municipio y resolvemos que la legislación expuesta antes claramente excluye a aquellas compañías subcontratadas, como Cobra, de ser exentas del pago de arbitrio de construcción. En el presente caso, la única exenta del pago de arbitrios de construcción es la dueña de la obra, la AEE. En vista de ello, cuando la letra de la ley es clara, este foro queda impedido de sustituirla.[17]

Ninguna de estas determinaciones estuvo sujeta a revisión por el Tribunal Supremo de Puerto Rico y, así, ambas adquirieron carácter

---

[16] Íd., pág. 11.
[17] Íd., pág. 13.

final y firme. Por eso, <u>lo determinado en ellas sobre los arbitrios de construcción constituye la ley del caso dentro del presente litigio.</u>

Y es que, examinado el derecho aplicable al arbitrio de construcción y la patente municipal según pormenorizado en nuestra *Sentencia* en el KLAN202300022[18], surge claramente que tampoco están presentes las razones que permiten descartar la aplicación de la doctrina de la ley del caso. No estamos ante una ley del caso errónea, ni una decisión que conduciría a resultados patentemente injustos. Aún más, tampoco se presenta variación alguna en los hechos del caso o en el estado de derecho imperante.

Por otra parte, no se sostiene el argumento de la parte peticionaria sobre cómo los casos *Lord Construction Group, Inc. v. Municipio Autónomo de San Juan,* KLAN202300577 y en *Municipio de Guánica y otros v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico,* KLAN202400062, deben forzar la conclusión de que Cobra debe ser eximida del pago de los referidos arbitrios bajo la premisa de que el Tribunal Supremo de Puerto Rico denegó su revisión. Dichos casos son persuasivos para efectos del litigio de este caso y no pueden ir por encima de una *Sentencia* de esta Curia dentro del presente caso, la cual advino final, firme e inapelable.

Así también el planteamiento de la parte peticionaria respecto a que no existe una determinación final que pueda constituir la ley del caso porque resolvimos revocar la *Sentencia* emitida por el foro primario no encuentra apoyo en derecho. De ese modo, aparenta plantear que nada de lo resuelto en el dictamen revocado en ese entonces, ni en nuestra *Sentencia,* debe sostenerse. Sin embargo, aunque hayamos revocado al TPI, la realidad es que, en

---

[18] Para un repaso más profundo del derecho vigente al momento de los hechos de este caso sobre el arbitrio de construcción, la exención extendida por ley a la AEE y las contribuciones municipales, véase la discusión elaborada por esta Curia en las Secciones B y C de la *Sentencia* emitida en el KLAN202300022.

cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, definimos claramente los hechos controvertidos y acogimos los que consideramos incontrovertidos. Por lo que no hay duda alguna en cuanto a ello. Esas determinaciones rigen el caso una vez es devuelto al foro de origen. Para eso se promulgó la referida Regla y, por eso, se exige que esta Curia cumpla con ella. ***Meléndez González et al. v. M. Cuebas***, supra, págs. 119-120. Es decir, pese a la revocación, persisten aquellos hechos incontrovertidos que fueron acogidos por esta Curia, mientras que las controversias de hechos materiales restan por ser resueltas por el foro primario. Solo así, se evitaría que las partes quedaran en la misma posición que estaban previo a la presentación de la moción de sentencia sumaria, atrasando injustificadamente el litigio.

Por último, el Municipio de Maunabo solicita que le impongamos sanciones económicas a Cobra por interponer el presente recurso de forma temeraria y frívola. No obstante, optamos por no imponerlas, en esta etapa de los procedimientos. Si bien la parte peticionaria ha reiterado nuevamente argumentos rechazados por esta Curia en dictámenes que han advenido finales y firmes, los cuales han establecido un curso de acción procesal que aún no se ha llevado a cabo y aunque al presente el litigio no envuelve un planteamiento complejo o novedoso – dado que resta únicamente evaluar las controversias de hecho y aplicar el derecho según resuelto –, entendemos que existía una desavenencia errónea, pero honesta, en cuanto a cuál de las partes debía ser beneficiada por el derecho aplicable, que amerita que no se le sancione, en esta ocasión. No obstante, advertimos a las partes que, de no cumplir con lo resuelto y volver a plantear los mismos argumentos, se impondrán severas sanciones.

A la luz de todo lo anterior, corresponde confirmar la *Resolución* emitida por el TPI al ser correcta en derecho y devolver el

caso para la continuación de los procedimientos, consistentes en el fiel cumplimiento del curso de acción ya resuelto por este panel.

**V.**

Por los fundamentos pormenorizados, se *expide* el auto de *Certiorari* y se *confirma* la *Resolución* recurrida. Se devuelve el caso al TPI para que actúe conforme a lo aquí dispuesto y dé fiel cumplimiento a nuestra *Sentencia* emitida el 17 de marzo de 2023 en el KLAN202300022.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones. El Juez Sánchez Ramos está conforme porque, independientemente de su postura en cuanto a la corrección de lo resuelto en la apelación anterior (KLAN202300022), ello constituye la ley del caso y obliga al Tribunal de Primera Instancia, y a este Tribunal, en la continuación del trámite de referencia.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones